Appeal No. 24-11069
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

DAVITA M. KEY

Plaintiff/Appellee

v.

DYNAMIC SECURITY, INC.

Defendant/Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CASE NO.: 2:19-cv-767-ECM

CHIEF JUDGE EMILY C. MARKS, PRESIDING
_____

APPELLANT'S PRINCIPAL BRIEF
_____

Wesley C. Redmond
Susan W. Bullock
FORDHARRISION, LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
T (205) 244-5905/(205) 244-5904
F (205) 244-5901
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellant Dynamic Security, Inc.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant/Appellant Dynamic Security, Inc. submits the following list of the trial judge, attorneys, individuals, associations, firms, partnerships, and corporations that have an interest in the outcome of this case on appeal:

Bae, Yurie Yeoul (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bond, Cortlin (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bradley Arant Boult Cummings, LLP (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

Brown, Whitney R. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Bullock, Susan W. (Attorney for Defendant/Appellant Dynamic Security, Inc.);

DeWeese & Bae, LLC (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

DeWeese, Richard L., Jr. (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Doyle, The Honorable Stephen M., United States Magistrate Judge for the Middle District of Alabama;

Dynamic Security, Inc. (Defendant/Appellant);

FordHarrison, LLP (Counsel for Defendant/Appellant Dynamic Security, Inc.);

Heather Leonard, P.C. (Counsel for Plaintiff/Appellee Davita M. Key);

Hyundai ENG America, Inc. (Defendant/Appellee);

Hyundai Motor Manufacturing Alabama, LLC (Defendant/Appellee);

Key, Davita M. (Plaintiff/Appellee);

Lehr Middlebrooks Vreeland & Thompson, P.C. (Counsel for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Leonard, Heather (Attorney for Plaintiff/Appellee Davita M. Key);

Marks, The Honorable Emily C., Chief Judge, United States District Court for the Middle District of Alabama;

Middlebrooks, David J. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Miller, T. Matthew (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Palmer Law, LLC (Counsel for Plaintiff/Appellee Davita M. Key);

Palmer, Leslie A. (Attorney for Plaintiff/Appellee Davita M. Key);

Redmond, Wesley C. (Attorney for Defendant/Appellant Dynamic Security, Inc.);

Smith, Scott Burnett (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Vaughn, Sarahanne Young (Attorney for Defendant/Appellee Hyundai ENG America, Inc.).

Pursuant to Fed. R. App. P. 26.1-3(b), Dynamic Security, Inc., states that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Corporate Disclosure. Pursuant to Fed. R. App. P. 26.1, and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, Defendant/Appellant Dynamic Security, Inc., submits this Corporate Disclosure, stating as follows: Dynamic Security, Inc. has not issued shares or debt securities to the public. Furthermore, no parent, subsidiary, or affiliate of Dynamic Security, Inc. has issued shares of debt securities to the public, nor does any publicly owned company own ten percent or more of the stock of the Dynamic Security, Inc. Defendant/Appellant Dynamic Security, Inc. is not aware of any other entity likely to be an active participant in the proceedings.

/s/ Wesley C. Redmond
Wesley C. Redmond
Susan W. Bullock
FORDHARRISON, LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203

T (205) 244-5905/(205) 244-5904
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellant Dynamic Security, Inc.*

STATEMENT REGARDING ORAL ARGUMENT

Defendant/Appellant Dynamic Security, Inc. ("Dynamic")[1] respectfully requests oral argument. Although this case presents settled legal principles, oral argument is necessary because of the multitude of issues and legal arguments, and oral argument would significantly aid the decisional process.

---

[1] For the remainder of this brief, all references to Defendant/Appellant Dynamic Security, Inc. are to "Dynamic;" all references to Plaintiff/Appellee Davita Key are to "Key."

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-3

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF CITATIONS AND AUTHORITIES ................................................ iv

STATEMENT OF SUBJECT MATTER ............................................................ ix

APPELLATE JURISDICTION ......................................................................... ix

STATEMENT OF THE ISSUES .........................................................................1

STATEMENT OF THE CASE .............................................................................4

    A.   Course of Proceedings and Disposition in the Court Below. .....................4

    B.   Statement of the Facts. ...........................................................................10

    C.   Statement of the Standards of Review. ..................................................16

SUMMARY OF THE ARGUMENT ..................................................................19

ARGUMENT AND CITATIONS OF AUTHORITY ..........................................20

    A.   Dynamic is Entitled to a New Trial as the Trial Court Improperly Failed to Enforce the Jury Trial Waiver. .................................................................20

    B.   The Jury's Finding that Key Engaged in Protected Activity under § 1981 Is Contrary to the Great Weight of the Evidence Because She Never Complained about Race Discrimination. ..................................................23

    C.   The Only Evidence Key Presented She Held a Good Faith Belief of Unlawful Race Discrimination Should Have Been Barred by the Best Evidence Rule, Leaving No Shred of Evidence to Prove She Engaged in Activity Protected by § 1981. ..................................................................27

    D.   Dynamic Should Be Awarded a New Trial Due to the Court's Failure to Instruct the Jury Properly on the Elements of a Retaliation Claim and on the Decision in *EEOC v. Catastrophe Mgmt. Sols.* and Due to Improper Comments Made in Closing. ..................................................................33

        1.   The Court's jury instruction did not instruct the jury to determine if Key engaged in protected activity by complaining about race discrimination. ......................................................................34

2. District court erred by failing to instruct jury that satisfying the element of causation requires the decision maker have knowledge of the asserted protected activity.......................................................41

3. Lack of proper jury instruction permitted improper, prejudicial, and false closing arguments by Key's attorney. ...........................................43

    a.    Arguments that the grooming policy itself is race discrimination were improper…………………………44

    b.    Argument that the Hyundai grooming policy may be the memo referenced by Gloria Robinson…………………45

E. The Trial Court Abused Its Discretion in Not Reversing or Remitting the Jury Award of Compensatory Emotional Damages. .................................46

F. The Trial Court Abused Its Discretion in Not Reversing or Remitting the Jury Award of Punitive Damages. ...........................................................48

    a.    Insufficient evidence of punitive damages……………..49

    b.    Constitutionally excessive punitive damages…………49

CONCLUSION....................................................................................................51

CERTIFICATE OF COMPLIANCE....................................................................52

CERTIFICATE OF SERVICE ............................................................................53

TABLE OF CITATIONS AND AUTHORITIES

Cases                                                                   Page(s)

*Akouri v. State of Fla. Dep't of Transp.*,
    408 F.3d 1338 (11th Cir. 2005).......................................................... 46, 47

*Aponte v. Brown & Brown of Fla., Inc.*,
    806 Fed.Appx. 824 (11th Cir. 2020)............................................... 17, 21

*Aponte v. Brown & Brown of Fla., Inc.*,
    2019 WL 12536008 (M.D. Fla. Feb. 21, 2019) ................................. 21

*Ash v. Tyson Foods, Inc.*,
    129 Fed.Appx. ...................................................................................... 48

*Ash v. Tyson*,
    664 F.3d 883 (11th Cir. 2011)...................................................... 47, 49

*Bakrac, Inc. v. Villager Franchise Sys, Inc.*,
    164 Fed.Appx. 820 (11th Cir. 2006)................................................. 20

*Balchunas v. Bank of Am., N.A.*,
    2020 WL 10354995 (M.D. Fla. Nov. 20, 2020) ............................... 23

*Bank of America v. Florida Glass*, Case,
    2017 WL 11017883 (M.D. Fla. August 8. 2017)............................... 21

*Bass v. Bd. of Cnty. Comm'rs, Orange Cnty.*, Fla.,
    256 F.3d 1095 (11th Cir. 2001).......................................................... 42

*Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*,
    389 F.3d 1339 (11th Cir. 2004).......................................................... 32

*Bell v. City of Auburn*,
    722 Fed. Appx. 898 ............................................................................ 24

*Benjamin v. Thomas*,
    766 Fed. Appx. 834 (11th Cir. 2019) ............................................... 30

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).................. 49

*Brinks v. Direct General Insurance Company*,
    38 F.4th 917 (11th Cir. 2022) ..................................................... 18, 38

*Broaddus v. Florida Power Corporation*,
    145 F.3d 1283 (11th Cir. 1998).......................................................... 39

*Brochu v. City of Riviera Beach*,
    304 F.3d 1144 (11th Cir. 2002).......................................................... 32

*Bryant v. Mascara*,
    800 Fed. Appx. .................................................................................... 32

*Burchfield v. CSX Transportation*,
    636 F.3d 1338 ................................................................................... 32
*Butler v. Alabama Dept. of Transportation*,
    536 F.3d 1209 (11th Cir. 2008) ........................................................ 27
*Carey v. Piphus*,
    435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ....................... 46
*Ceus v. City of Tampa*,
    803 Fed. Appx. 235 (11th Cir. 2020) ............................................... 26
*Christopher v. Cutter Labs.*,
    53 F.3d 1184 (11th Cir. 1995) ..................................................... 39, 43
*Christopher v. Florida*,
    449 F.3d 1360 (11th Cir. 2006) ................................................... 43, 45
*Collins v Countrywide Home Loans, Inc.*,
    680 F. Supp. 2d 1287 (M.D. Fla. 2010) ........................................... 22
*Coniglio v. Bank of Am.*, NA,
    638 Fed.Appx. 972 (11th Cir. 2016) ................................................. 17
*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*,
    402 F.3d 1092 (11th Cir. 2005) ........................................................ 18
*Cote v. Philip Morris USA, Inc.*,
    985 F.3d 840 (11th Cir. 2021) .......................................................... 50
*Coutu v. Martin County Board of Cty Comms.*,
    47 F.3d 1068 (11th Cir. 1995) .......................................................... 24
*Deas v. PACCAR, Inc.*,
    775 F.2d 1498 (11th Cir. 1985) ........................................................ 17
*Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt.*,
    852 F.3d 1018 (11th Cir. 2016) ................... 2, 8, 19, 26, 27, 33, 41, 44
*Ferrill v. Parker Group, Inc.*,
    168 F.3d 468 (11th Cir. 1999) .......................................................... 48
*Finnerty v. Stiefel Lab'ys, Inc.*,
    756 F.3d 1310 (11th Cir. 2014) ........................................................ 38
*Furcron v. Mail Centers Plus, LLC*,
    843 F.3d ............................................................................................ 24
*Goldsmith v. Bagby Elevator Co., Inc.*,
    513 F.3d 1261 (11th Cir. 2008) ............................................. 18, 43, 49
*Goldstein v. Manhattan Indus., Inc.*,
    758 F.2d 1435 (11th Cir. 1985) ........................................................ 48
*Gordon v. United States*,
    344 U.S. 414 (1953) ......................................................................... 30
*Gowski v. Peake*,
    682 F.3d 1299 (11th Cir. 2012) ........................................................ 39

*Grange Mutual Casualty Co. v. Slaughter*,
  958 F.3d 1050 (11th Cir, 2020)..................................................... 31
*Gupta v. Fla. Bd. of Regents*,
  212 F.3d 571 (11th Cir. 2000)....................................................... 16
*Harper v. Blockbuster Entm't Corp.*,
  139 F.3d 1385.............................................................................. 28
*Howard v. Walgreen Co.*,
  605 F.3d 1239 (11th Cir. 2010)..................................................... 16
In *re Lynch*,
  755 Fed. Appx. (11th Cir. 2018) .................................................. 30
*Jefferson v. Sewon America*,
  891 F.3d 911 (11th Cir, 2018)....................................................... 27
*Jeronimus v. Polk Cnty. Opportunity Council*,
  145 Fed.Appx. 319 (11th Cir. 2005) ............................................ 24
*Kenison v. Schellman & Co., LLC*,
  2020 WL 4718435 (S.D. Fla. Aug. 13, 2020) .............................. 23
*Lambrix v. Sec'y, Fla. Dep't of Corr.*,
  851 F.3d 1158 (11th Cir. 2017)..................................................... 17
*Langford v. Magnolia Advanced Materials, Inc.*,
  709 Fed. Appx. 639 (11th Cir. 2017) ........................................... 26
*Litman v. Sec'y, of the Navy*,
  703 Fed.Appx. 766 (11th Cir. 2017) ............................................ 23
*Little v. United Technologies, Carrier Transicold Div.*,
  103 F.3d 956 (11th Cir. 1997)....................................................... 27
*Madura v. BAC Home Loans Servicing L.P.*,
  851 F. Supp. 2d 1291 (M.D. Fla. 2012) ....................................... 22
*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
  817 F.3d 1241 (11th Cir. 2016)..................................................... 17
*McWhorter v. City of Birmingham*,
  906 F.2d 674 (11th Cir. 1990)....................................................... 44
*Medina v. Multaler*,
  2007 WL 5124009 (C.D. Cal. February 7, 2007) ......................... 30
*Montgomery v. Noga*,
  168 F.3d 1282 (11th Cir. 1999)..................................................... 18
*Myers v. Cent. Fla. Inv., Inc.*,
  592 F.3d 1201 (11th Cir. 2010)..................................................... 50
*O'Neil v. W.R. Grace & Co.*,
  410 F.2d 908 (5th Cir. 1969)........................................................ 17
*Panarella v. Citimortgage*, Inc.,
  2011 WL 12848536 (M.D. Fla. 2011) .......................................... 22

*Rob-Wal Inv. Co. v. Jacobsen*,
  2009 WL 10689142 (N.D. Ala. Aug. 6, 2009) .................................................. 21
*Rosa v. City of Fort Myers*,
  2008 WL 398975 (M.D. Fla. Feb. 12, 2008) ................................................ 18, 43
*Roundtree v. Bowers*,
  2022 WL 17986182 (11th Cir. December 29, 2022) ......................................... 30
*Sanchez v. Discount Rock and Sand, Inc.*,
  84 F.4th 1283 .................................................................................................. 38
*Speedstar Division of AMCA International*,
  979 F.2d 823 (11th Cir. 1992)......................................................................... 38
*Stalley v. Allstate Insurance*,
  682 Fed.Appx. 846 (11th Cir. 2017).................................................................. 38
*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408, 123 S. Ct. 1513, 155 L.Ed.2d 585 (2003).................................... 50
*Texas & P. Ry. Co. v. Griffith*,
  265 F.2d 489 (5th Cir, 1959)............................................................................ 40
*Thomas v. Home Depot USA, Inc.*,
  792 Fed.Appx. 722 (11th Cir. 2019).................................................................. 39
*Tucker v. Hous. Auth. of Birmingham Dist.*,
  229 Fed.Appx. 820 (11th Cir. 2007).................................................................. 18
*United States EEOC v. St. Joseph's Hosp., Inc.*,
  842 F.3d 1333 (11th Cir. 2016)......................................................................... 17
*United States v. Barton*,
  909 F.3d 1323 (11th Cir, 2018).......................................................................... 32
*United States v. Davis*, 779, F.3d 1305, 1311 (11th Cir. 2015)........................... 35
*United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017)............................ 35
*United States v. Gaskell*,
  985 F.2d 1056 (11th Cir. 1993)......................................................................... 32
*United States v. Maradiaga*,
  987 F.3d 1315 (11th Cir. 2021)......................................................................... 32
*United States v. Presley*,
  487 F.3d 1346 (11th Cir. 2007)......................................................................... 40
*United States v. Ruiz*, 59 F.3d 1151 (11th Cir. 1995),....................................... 36
*United States v. Varazo*,
  118 F.4th 1346 (11th Cir. 2024) ....................................................................... 32
*United States v. Williams*, 435 Fed. Appx. 868, 870 (11th Cir. 2011) ................ 35
*Wiedeman v. Canal Ins. Co.*,
  770 Fed.Appx. 497 (11th Cir. 2019).................................................................. 39
*Williams v. Mast Biosurgery USA, Inc.*,
  644 F.3d 1312 (11th Cir. 2011)......................................................................... 31

Statutes

28 U.S.C. § 1291 ................................................................................. 11
28 U.S.C. § ........................................................................................ 11
42 U.S.C. § 1981 ............................................................................ 1, 2, 4

Rules

11th Cir. R. 26.1-1, 26.1-2 and 26.1-3 ................................................. 3
Fed. R. App. P. 32(a)(5) ..................................................................... 52
Fed. R. App. P. 32(a)(6) ..................................................................... 52
Fed. R. App. P. 32(a)(7)(B) ................................................................ 52
Fed. R. App. P. 32(f) .......................................................................... 52
Federal Rule of Civil Procedure Rule 59(a) ....................................... 17
Rule 26.1 of the Federal Rules of Appellate Procedure .................... 1, 3
Rule 59 .............................................................................................. 17
Rule 59(e) .......................................................................................... 17
Rule 1002, Fed. R. Evid .............................................. 1, 7, 28, 29, 30
Rules 50, 59, and 60 of Federal Rules of Civil Procedure ........... 10, 11, 9

<u>STATEMENT OF SUBJECT MATTER</u>
<u>AND APPELLATE JURISDICTION</u>[2]

This is an appeal from the: (a) Jury Verdict for Key entered in this action on March 29, 2023 (Doc. 185) and the final Order and Judgment entered for Key on March 30, 2023, (Doc. 186); (b) the Memorandum Opinion and Order entered by the Court on March 11, 2024, denying Dynamic's Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter or Amend the Judgment; or Alternatively, for a New Trial or Remittitur of Emotional Distress and Punitive Damages (Doc. 212), which includes the district court's ruling on and denial of Dynamic's motion for renewed judgment as a matter of law and motions to vacate the judgment, for a new trial, and/or for remittitur of the damages pursuant to Rules 50, 59, and 60 of Federal Rules of Civil Procedure; (c) Order entered by the Court on February 21, 2023, denying Dynamic's Motion to Strike Key's Jury Demand (Doc. 147); (d) Oral Order entered March 27, 2023, denying Dynamic's First Motion in Limine to exclude Key's Testimony About Gloria Robinson's Alleged Comments about the Content of Memos Sent by "The Koreans" (Appendix Tab B, Oral Order dated March 27, 2023); (e) the Oral Orders entered March 28, 2023, and March 29, 2023, denying Dynamic's Motion for Judgment as a Matter of

---

[2] Record citations reference the district court docket number ("Doc.") and page number appearing in the ECF header. For clarity, citations to trial transcripts are identified as "Tr." by relevant page and line numbers. To illustrate, "Doc. 194, Tr. I-113:4-7 represents docket number 194, transcript Volume I, page 113, lines 4 through 7.

Law (Appendix Tabs C and D, Oral Order dated March 28, 2023, and March 29, 2023); (f) Oral Order entered March 28, 2023, denying Dynamic's proposed jury instructions (Doc. 161), in particular the "*Catastrophe Management*" instructions, the instruction that Key has to complain of race discrimination to amount to protected activity, and the instruction that the decision-maker must have knowledge of the protected activity; (g) denial of Dynamic's Jury Verdict Form (Doc. 181) as reflected in Jury Verdict Form submitted to jury on March 30, 2023 (Doc. 185); and (h) Closing Jury Instructions to jury as entered by the Court on March 30, 2023. (Doc. 184).

The sole claim on appeal is a 42 U.S.C. § 1981 ("§ 1981") retaliation claim. The district court had subject matter jurisdiction under 28 U.S.C. § 1331 over this federal § 1981 claim.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered on March 30, 2023, a final judgment on jury verdict against Dynamic (Doc. 185) and ruled and denied on March 11, 2024, Dynamic's motion for renewed judgment as a matter of law and motions to vacate the judgment, for a new trial, and/or for remittitur of the damages pursuant to Rules 50, 59, and 60 of Federal Rules of Civil Procedure (Doc. 212), and Dynamic filed a timely notice of appeal on April 5, 2024, from that order and final judgment. (Doc. 217).

STATEMENT OF THE ISSUES

1.    Whether the district court erred by denying Dynamic's motion to strike Key's jury demand on grounds of waiver where the evidence shows the employee handbook contained an explicit jury waiver, Key signed an acknowledgement she received the handbook, and Key testified in deposition that she understood the meaning of having waived her right to a jury trial.

2.    Whether the district court abused its discretion in denying Dynamic's request for judgment as a matter of law or new trial because the jury's finding that Key engaged in protected activity in violation of 42 U.S.C. § 1981 was contrary to the great weight of the evidence because Key never complained about race discrimination.

3.    Whether the district court abused its discretion in denying Dynamic's request for judgment as a matter of law or new trial because the jury's finding that Key engaged in protected activity in violation of 42 U.S.C. § 1981 was contrary to the great weight of the evidence because Key as a matter of law could not have had a good faith belief that she was subjected to race discrimination.

4.    Whether the district court abused its discretion in violation of Rule 1002, Fed. R. Evid. (the "Best Evidence Rule") where it admitted as the sole evidence on which Key relied to establish she had a good faith belief her complaints about her hairstyle were protected complaints of race discrimination was her own

hearsay testimony of the content of multiple written memoranda issued by Hyundai and the district court admitted this testimonial evidence requiring admission of the written memoranda.

5.      Whether the district court abused its discretion by denying Dynamic's request for a jury charge that instructed the jury to specifically determine if Key engaged in protected activity pursuant to 42 U.S.C. § 1981 where the evidence showed Key complained about hair discrimination.

6.      Whether the district court abused its discretion by denying Dynamic's request for a jury charge that instructed the jury that the causal connection element of a 42 U.S.C. § 1981 retaliation claim requires sufficient evidence to show the decision-maker knew of Key's complaint of hair discrimination and that she subjectively believed it to be a complaint of race discrimination.

7.      Whether the district court abused its discretion by denying Dynamic's request for a jury charge that instructed the jury that applicable Eleventh Circuit law is that a neutral grooming policy prohibiting dreadlocks is not unlawful race discrimination pursuant to *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016).

8.      Whether the district court abused its discretion by denying Dynamic's request for a new trial based on improper and misleading comments Key's counsel made to the jury during closing statements that: (a) the relevant grooming policy

prevents black people from wearing dreadlocks and (b) the grooming policy itself was racially discriminatory.

9.      Whether the trial court committed a clear abuse of discretion in not remitting the emotional distress and/or punitive damages awarded to Key.

10.      Whether the trial court committed a clear abuse of discretion in not remitting the punitive damages award as constitutionally excessive.

STATEMENT OF THE CASE

This action arises out of the two days Key worked for Dynamic at the Hyundai facility in Montgomery, Alabama. After those two days, Key never returned to work for Dynamic or any of its clients. Key claimed she was terminated from her employment due to her race and as retaliation following a complaint about hair discrimination when she was told wearing a dreadlock hairstyle was against Hyundai's grooming policy. Dynamic denies those claims.

B.    Course of Proceedings and Disposition in the Court Below.

Key filed a Complaint on October 10, 2019, against Hyundai Motor Manufacturing Alabama, LLC; Hyundai Engineering America, Inc.; and Dynamic Security, Inc. (Doc. 1). The Complaint asserted three claims pursuant to Title VII: discrimination based on race (Count I), discrimination based on pregnancy (Count II), and retaliation for making an inquiry into Defendant HMMA's employment policies regarding pregnancy and hair grooming. (Count III). (Doc. 1, ¶¶ 29-32, 33-38, and 39-40, respectively).

Key filed an Amended Complaint on June 1, 2020, against the same parties. (Doc. 28). The Amended Complaint asserted claims of pregnancy discrimination in termination (Count One, Title VII), race discrimination in termination based on hairstyle (Count Two, Title VII; Count Three, 42 U.S.C. § 1981), and retaliation for complaining of a racially disparate hair grooming policy (Count Four, Title VII;

4

Count Five, § 1981). (Doc. 28, ¶¶ 96-108, 109-124, 125-138, 139-150, and 151-162, respectively). Dynamic filed an Answer and Defenses to Key's Amended Complaint. (Doc. 43).

Dynamic filed on October 12, 2022, a summary judgment motion on all pending claims (Doc. 73) and a reply on November 11, 2022. (Doc. 87). On February 10, 2023, the district court granted summary judgment on all claims against Dynamic except for Key's § 1981 retaliation claim. (Doc. 138). The district court's denial of Dynamic's motion for summary judgment on the § 1981 retaliation claim was based solely on Key's testimony that "Robinson allegedly told her that 'the Koreans' 'send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks]." (Doc. 138 at 34) (citing Doc. 68-12 at 41). The district court held, "[t]aking Key's complaint about being discriminated based on her dreadlocks 'in its social context' – with its temporal proximity to the statement about how 'the Koreans' do not want 'African Americans' wearing dreadlocks – a reasonable jury could find that Key reasonably believed such a complaint was about race discrimination" (doc. 138 at 34-35) . . .  and that "a reasonable jury could find that this fact [Robinson's reference to the content of memos] permits a complainant to both subjectively and objectively believe that complaining about discrimination due to her dreadlocks was the functional equivalent of complaining about race discrimination." (*Id*. at 35).

On December 27, 2022, Dynamic filed a motion to strike jury trial because Key signed an acknowledgement that she read and understood the security officer's handbook that included an express jury waiver and also testified in deposition she understood its meaning. (Doc. 89 at 2-6). On February 21, 2023, the district court denied without opinion Dynamic's motion to strike. (Doc. 147).

Before the trial started, Dynamic filed several motions in limine that the district court on March 27, 2023, granted in part and denied in part. The district court granted in part Dynamic's Fifth Motion in Limine to exclude any evidence or argument about Key filing an EEOC Charge against Dynamic Security, Inc. (Appendix Tab D, Oral Order dated March 27, 2023). The district court's oral order held Key's Charge of Discrimination filed with the Equal Employment Opportunity Commission (the "EEOC Charge") against Dynamic was not an act of protected activity. (*Id*.).[3] The district court denied by oral order entered on March 27, 2023, Dynamic's "First Motion in Limine to exclude Key's Testimony about Gloria Robinson's alleged comments about the content of memos sent by 'the Koreans.'" (Appendix Tab B, Oral Order dated March 27, 2023). Dynamic moved to exclude from the jury Key's testimony that a Dynamic supervisor told her "the Koreans" (referring to one or both Hyundai entities) send around little memos about not

---

[3] This was based on Key's failure to allege in the pretrial pleadings that the EEOC Charge was an act of protected activity.

wanting African Americans wearing their hair in dreadlocks; Dynamic argued admission of testimony of the content of a document without admitting the document itself violated Rule 1002 of the Federal Rules of Evidence (the "Best Evidence Rule").

A jury trial began on March 27, 2023. (Appendix Tab E, Minute Entry dated March 28, 2023). On March 28, 2023, at the close of Key's case, Dynamic moved for judgment as a matter of law requesting dismissal of Key's retaliation claim based on Key's failure to offer evidence she engaged in any protected activity by complaining of race discrimination, that the decision maker was aware of any complaints of race discrimination, and that Key had presented no admissible evidence supporting the essential element of having a good faith basis she was subjected to race discrimination because the only evidence she presented was the testimony about the memos the Koreans allegedly wrote[4] that was legally barred by the Best Evidence Rule. (Doc. 182). The district court's oral orders entered March 28, 2023, denied Dynamic's Motion for Judgment as a Matter of Law (Appendix Tab C, Oral Order dated March 28, 2023). Dynamic renewed its motion for judgment as a matter of law on March 29, 2023, which the Court denied by oral order. (Appendix Tab D, Oral Order dated March 28, 2023).

---

[4] At trial there was no testimony that the alleged memos exist other than Key's testimony regarding what she was told by a supervisor.

On March 29, 2023, the district court rejected Dynamic's proposed jury instructions and special interrogatories, adopted and finalized Key's proposed jury instructions, and charged the jury. (Doc. 196, Tr. III-11:18-12:10; III-95:2-97:24; Docs. 179, 181, 185). The district court gave two jury instructions to which Dynamic objected on grounds they did not adequately inform the jury as to the definition of "protected activity" or the evidentiary requirements for establishing causation. First, Dynamic asserted the jury instruction should inform the jury that, to qualify as "protected activity" under the law, Key must have presented evidence that she specifically complained of discrimination because of her race. (Compare Doc. 179 and 185). The second challenged instruction did not inform the jury Key must have established the decision maker had knowledge of the protected activity to have been motivated by it. (*Id.*) Dynamic further objected to the district court's refusal to give a jury charge based on this Court's decision in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016), which held enforcing a neutral grooming policy is not race discrimination and does not violate § 1981.

The jury returned a verdict on March 29, 2023, finding Dynamic retaliated against Key in violation of § 1981 and awarded compensatory back pay damages of $85,200.00, compensatory emotional pain and suffering damages of $214,864.00, and punitive damages of $511,200.00, plus interest. (Doc. 185). The Order and

Judgment on the jury verdict was entered on March 30, 2023, summarizing the jury's findings. (Doc. 186).

On April 26, 2024, Dynamic filed its motion for renewed judgment as a matter of law and motions to vacate the judgment, for a new trial, and/or for remittitur of the damages pursuant to Rules 50, 59, and 60 of Federal Rules of Civil Procedure. (Doc. 197). Specifically, Dynamic renewed its motion for judgment as a matter of law because the evidence did not support the verdict on Key's sole § 1981 retaliation claim. Dynamic sought a new trial because of an evidentiary error in the application of the Best Evidence Rule,[5] errors in the jury instructions, and prejudicial comments made by Key's counsel during closing arguments that were allowed due to the errors in the jury instructions. (*Id*.) Dynamic sought to amend or vacate the judgment on the jury's verdict or obtain a new trial on that claim or to reduce the damages. (*Id*.)

The district court on March 11, 2024, entered an order denying Dynamic's Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter or Amend the Judgment; or Alternatively, for a New Trial or Remittitur of Emotional Distress and Punitive Damages. (Doc. 212).

---

[5] The district court overruled Dynamic's Best Evidence Rule objection to admission of Key's testimony that a Dynamic manager told her about the content of memoranda documents; besides this testimony, Key offered no other evidence to establish she had a good faith belief that Dynamic subjected her to race discrimination, which prevents her from satisfying the elements of a retaliation claim.

C.    <u>Statement of the Facts</u>.

Key submitted a job application to work for Dynamic Security assigned in the mail room at the Hyundai plant. (Doc. 194, Tr. I-6:23-25; I-49:8-12). On or around July 19, 2017, Gloria Robinson of Dynamic interviewed Key for the mail room job. (*Id.*, I-50:5-11). LaTunya Howell, a Dynamic employee, trained Key to work in the mail room. (*Id.*, I-103:9-12). Hyundai Motor Manufacturing Alabama ("HMMA") employee Cassandra Williams was present during part of Key's interview. (Doc. 195, Tr., II-39:16-21).

At the outset of her employment, Dynamic gave Key its Security Officer's Handbook ("Handbook"), which she testified she indeed received at that time. (Doc. 194, Tr. I-104:12-105:13; DX21[6]). Key testified she signed an "Acknowledgement and Receipt of Employee Handbook," confirming she has received the Security Officer's Handbook and is bound by the policies therein. (Doc. 195, Tr. II-22-22:24; DX12). The Handbook included a section entitled "Waiver of Trial By Jury Policy." (DX21, Security Officer's Handbook at 37-39). A two-page index at the beginning of the Handbook showed the "Waiver of Trial by Jury Policy" was found on page 37 which states in full:

## WAIVER OF JURY TRIAL POLICY

It is the desire of Dynamic Security to resolve disputes, whenever possible, in a fair and expeditious manner reflecting the interest of the

---

[6] References to Key's trial exhibits are "PX" and Dynamic's trial exhibits are "DX".

concerned parties. Although there is no outstanding dispute at this time between the parties, it is recognized that as in any relationship, difference may arise which are not resolved and result in litigation.

In consideration of Dynamic Security, Inc. offering you employment and employing you, you and Dynamic Security each agree that in the event either party (or its successors or assigns) brings an action against the other relating to your recruitment, employment, or termination of employment from Dynamic Security Inc. the plaintiff in such action agrees to waive his/her rights to a trial by jury and future [*sic*] agrees that no demand, request or motion will be made for trial by jury.

      This waiver of jury trial will cover:

1.     All actions, claims, and demands directly or indirectly related to recruitment, employment or termination from Dynamic Security Inc.

2.     All issues and causes of actions brought in any lawsuit in which an employment related claim is made.

3.     Initial, subsequent, and future proceeding related to (1) and (2) above….

By waiving the right to a jury trial an employee is not limiting their rights to trial by judge. However, the right to a jury is of value. Security Officers may wish to consult an attorney prior to signing this agreement. If so, the Officer may take this handbook with him/her; however, employment will not be offered until this is agreed upon; and in the event that the individual does not agree to the Rules and Regulations outlined in this handbook, the handbook must be returned immediately.

(DX21 at 37-39). Notably, the Handbook informed Key she could consult with an attorney before accepting it. (DX21 at 7).

On July 21, 2017, Key signed an "Acknowledgement and Receipt of Employee Handbook" that stated she had received and read the Handbook and

11

agreed to be bound by the rules, regulations, and policies set forth in the Handbook, which included the Jury Waiver Policy. (DX13, Key's Acknowledgment and Receipt of Employee Handbook). In deposition, Key testified that she signed for the Handbook and read both the Acknowledgment and the Handbook. (Doc. 75-1, at 53-54; DX6). Key specifically testified that she read the Jury Waiver Policy and understood what it meant. (Ex. 75-1 at 55). Likewise, Key testified at trial under oath she signed the acknowledgement of having received the Handbook with the Jury Waiver Policy and that she also had read and understood the Jury Waiver Policy as meaning she waived her right to a trial by jury. (Doc. 194, Tr. I-107:5-14; Doc. 195, Tr. II-22:2-24); DX12).

Key understood that compliance with Dynamic's Policies and Procedures was a condition of her employment and her continued employment, testifying she read Dynamic's Pre-Employment Screening when she signed it on July 21, 2017. (Docs 75-1, 23:15-26:1; 75-2 at 1-2). She specifically confirmed in deposition she had read the sentence stating, "I understand that compliance with the company's policies and procedures is a condition of my employment." *Id*. The Security Officer's Handbook Key testified to having read at the time she was hired stated, "[c]ontinued employment is contingent upon compliance with all Rules and Regulations. . ." (DX21 at 3).

12

At the trial, Key testified that she read some portions and skimmed some portions of the Security Officer's Handbook (that contained the jury trial waiver) before beginning work but was unable to identify when she read the jury trial waiver. (Doc. 194, Tr. I-106:17-107:1, 107:9-108:6; Doc. 195, Tr. II-23:4-7). Key again testified she understood jury trial waiver. (Doc. 194, Tr. I-107:12-14).

Key's first day of work as mailroom clerk was July 31, 2017. (Doc. 194, Tr. I-67:5). Key's pay was $13.00 an hour. (Doc. 194, Tr. I-79:22-23). HEA has a grooming policy for Security Contractors that applies to all security officers assigned post duties at HMMA, including those assigned to the mailroom. (DX5). HEA Appearance Standards for Security Personnel provides, "Natural Dreads, Dreadlocks, Locs or similar such hairstyles are strictly prohibited. However, weaved or crocheted in type dreads are allowed." (*Id.*)

During her interview, Robinson told Key that her dreadlocks might be a problem. (Doc. 194, Tr. I-108:9-16). Cassandra Williams also was in the interview; Key's hair was discussed, and Key agreed to wear her hair in that agreed-upon style. (Doc. 194, Tr. I-109:15-23). Key appeared at work her first day on July 31, 2017; her hair was not in that style, and she was sent home. (Doc. 194, Tr. I-110:12-17; 112:6-8; 113:17 – 114:8). The second day, Key still did not have her hair styled as agreed, but wore a hat to work and worked less than two hours. (Doc. 194, Tr. I-114:9-17). After two hours, Key went to Dynamic's office to file a complaint. (Doc.

194, Tr. I-120:17-20). Someone other than Dynamic requested Key be removed from the Hyundai facility. (Doc. 194, Tr. II-94:10-14). That day, August 1, 2017, was the last day Key worked for Dynamic. (Doc. 195, Tr. II-29:4-6). Key worked for Dynamic for two days for a total of approximately three hours. (Doc. 194, Tr. I-78:16-22: 100:1-3).

Key complained to Robinson about the policy against her hairstyle; Her written complaint referenced discrimination based on her "hairstyle (dreadlocks)." (Doc. 194, Tr. I-63:14-65:7, I-125:2-10; PX3 ("I believe that I have been discriminated against on the basis of my current hairstyle (dreadlocks))"); PX4 (same)). Key's official complaint says nothing about race. (PX3; Doc. 194, Tr. I-125:2-10). Key's rebuttal statement to Dynamic says nothing about race. (PX6; Doc. 194, Tr. I-125:11-126:2). Key's complaint to Trainer LaTunya Howell was about her hair only, telling her trainer she was sent home "because of my hair." (Doc. 194, Tr. I-77:11-22, 114:25-115:7, 125:20-23). In every discussion about her complaint, she referenced only her hair. (Doc. 194, Tr. I-69:21-70:2, 88:1-89:6). Every email Key placed into evidence referenced her hair only and not race. (PX5 ("recently removed from HMMA because of an issue over her hair" and "threats to sue HMMA over appearance standards"); PX7 ("'Ms. Key is trying to imply that she was removed due to her pregnancy and not just because her hair was out of compliance with the rules")).

Key told Dynamic's District Manager Ray Cureton ("Cureton") the discrimination she experienced was "because of my hair." (Doc. 194, Tr. I-124:19-23). Key never told Cureton of a race-related complaint. (Doc. 195, Tr. II-83:5-15; 89:15-17). Key never Cureton why she subjectively believed HMMA removed her from the plant because of her race, which was Robinson's representation to her of memos sent by "the Koreans" that they did not like African Americans wearing dreadlocks. (Doc. 195, II-89:18-21). Cureton interpreted her complaint about her hair and not her race. (Doc. 195, II-80:6-14, 83:1-23, 98:17-19). Dynamic Human Resources Director Sherry Spires similarly understood Key's complaint to be about hair and not race. (Doc. 195, Tr. II-121:9-12, 161:23-162:1, 162:12-163:5, 171:6-8). Key never complained to anyone at Dynamic that white employees were treated better than black employees or that she suffered race discrimination. (Doc. 195, Tr. II-25:12-22). The only testimony is that she complained about grooming standards or "hair discrimination."

Key's trial testimony regarding her EEOC Charge against Dynamic was that it was about her hair and she did not tell the EEOC she had been treated worse than white employees because of her race. (Doc. 195, Tr. II-24:18-25:7). Dynamic had received from Key the official complaint of discrimination due to her "hair (dreadlocks)." (PX4). Key never notified anyone at Dynamic that she considered this a form of race discrimination. Dynamic then receives a mail notice that Key has filed

a charge of race discrimination that contains no details about the nature of the complaint.[7] There is no evidence that Dynamic knew this Charge related to Key's earlier claim of hair discrimination.

The only evidence Key offered to support her belief her claim of hair discrimination due was based on race was her testimony Gloria Robinson told her "the Koreans there – she said they send these memos, and they don't want African Americans wearing their hair like this." (Doc. 194, Tr. I-57:11-25). Key testified that as the only basis for her belief that she was subjected to race discrimination. (*Id*. at 65:24-66:9, 116:9-117:13). No evidence was presented at trial that such memos even exist. Key testified she never saw the alleged memos and has no information such memos exist separate from Gloria Robinson's statement. (*Id*. at 118:1-119:5).

D.    <u>Statement of the Standards of Review</u>.

This Court reviews the denial of a motion for judgment as a matter of law under Rule 50 *de novo*, applying the same standard as the district court. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). Judgment as a matter of law is proper when the non-moving party presents no legally sufficient evidentiary basis for a reasonable jury to find for that party on a material element of the cause of action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).

---

[7] The Charge itself was not placed into evidence, and Cureton who Key claims was the decision maker never saw the Charge. (Doc. 195, Tr. II-89:3-5).

This Court reviews the court's decision under Federal Rule of Civil Procedure Rule 59(a) not to grant a new trial for abuse of discretion. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1255 (11th Cir. 2016). The Eleventh Circuit recognizes that under Rule 59 a new trial may be granted if the "verdict is against the weight of the evidence" or "for other reasons: for example, evidence improperly admitted, prejudicial statements by counsel, an improper charge to the jury or newly discovered evidence.'" *Deas v. PACCAR, Inc.,* 775 F.2d 1498, 1504 (11th Cir. 1985) (quoting *O'Neil v. W.R. Grace & Co.*, 410 F.2d 908, 914 (5th Cir. 1969)).

Similarly, this Court reviews the denial of a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion *United States EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016).

Whether to grant relief under Rule 60(b)(1) is also reviewed for abuse of discretion. *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 851 F.3d 1158, 1170 (11th Cir. 2017). "'The district court abuses its discretion when it uses the incorrect legal standard, applies the law incorrectly, follows the wrong procedure, or commits clearly erroneous findings of fact.'" *Coniglio v. Bank of Am.*, NA, 638 Fed.Appx. 972, 974 (11th Cir. 2016).

Review of a ruling on a motion to strike a jury demand is *de novo*. *Aponte v. Brown & Brown of Fla., Inc*., 806 Fed.Appx. 824, 827 (11th Cir. 2020).

17

This Court reviews the district court's evidentiary rulings for abuse of discretion. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

This Court reviews the refusal to provide jury instructions for abuse of discretion. *Brinks v. Direct General Insurance Company,* 38 F.4th 917, 922 (11th Cir. 2022).

This Court reviews the district court's decision not to grant a new trial based on abuse of discretion. "[M]otions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999). For reversible error to be found in closing argument, the challenged argument must be plainly unwarranted and clearly injurious." *Rosa v. City of Fort Myers*, No. 2:05-cv-481-FtM-29SPC, 2008 WL 398975, *2 (M.D. Fla. Feb. 12, 2008) (citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1276 (11th Cir. 2008) (internal citations omitted). The reasons justifying such relief include "a verdict which is against the weight of the evidence, substantial errors in the admission or rejection of evidence, and improper opening statements or closing arguments." *Rosa,* 2008 WL 398975, at *2 (internal citations omitted).

A district court's denial of a motion for remittitur or a new trial on the issue of damages is reviewed for "a clear abuse of discretion." *Tucker v. Hous. Auth. of Birmingham Dist.,* 229 Fed.Appx. 820, 826 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The district court made multiple errors during the trial and in ruling on Dynamic's post-trial motions. There was no evidence that Key ever complained of race discrimination with all of her complaints being about her hair and Hyundai's neutral grooming policy. Based on this Court's decision in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016), a neutral grooming policy prohibiting dreadlocks is not an act of race discrimination. So also, based on *Catastrophe Mgmt. Sols*, Key could not have had a good faith belief that she was subjected to race discrimination by not being allowed to wear her hair in dreadlocks. The only evidence offered to or relied on by the district court to find a good faith belief was Key's own testimony describing the contents of memos that say the Koreans who own Hyundai do not like African Americans to wear dreadlocks, evidence which clearly describes the contents of a document and, therefore, violates the Best Evidence Rule. Furthermore, the district court erred in refusing to instruct the jury (a) that an essential element of a retaliation claim is that the Key complained of race discrimination; (b) that the decision maker had to be aware the Key complained of race discrimination; and (c) of this Court's ruling in *Catastrophe Mgmt. Sols*.

Finally, the district court erred in refusing to enforce the jury trial waiver in the handbook Key received and admitted she read. The jury trial waiver meets all

of the requirements for it to be enforceable, and Key has offered no evidence that she was not aware of it when she began work or that the jury trial waiver was otherwise not enforceable. During the trial, the district court committed error and caused substantial prejudice to Dynamic by the actions above identified.

ARGUMENT AND CITATIONS OF AUTHORITY

A.    <u>Dynamic is Entitled to a New Trial as the Trial Court Improperly Failed to Enforce the Jury Trial Waiver.</u>

This Court's February 21, 2023, Order denied Dynamic's motion to strike Key's jury demand. (Doc. 147). The district court issued the Order without opinion. At the hearing on the motion, the court articulated two reasons for denying the motion. First, while the court recognized the evidence that Key had signed an acknowledgement that she received and read the employee handbook contained an explicit written jury trial waiver, it determined Key's handbook acknowledgement was not a "knowing and voluntary" waiver because the page she signed did not also include the waiver language contained in the handbook, and no page containing Key's signature referenced the jury trial waiver. Second, the district court found it problematic that, while Key testified in deposition that she had read the explicit jury waiver contained in the employee handbook and that she understood its meaning, Key did not identify the date on which she read and understood the waiver.

A civil litigant may validly waive the right to a jury trial when the waiver is knowing and voluntary. *Bakrac, Inc. v. Villager Franchise Sys, Inc*., 164 Fed.Appx.

20

820, 823 (11th Cir. 2006); *Aponte v. Brown* & Brown of Fla., Inc., No. 618CV161ORL22GJK, 2019 WL 12536008, at *2 (M.D. Fla. Feb. 21, 2019), aff'd, 806 Fed.Appx. 824 (11th Cir. 2020). In *Aponte,* 806 Fed.Appx. at 827, this Court affirmed the  lower court's decision to strike the plaintiff's jury demand in an employment agreement where the jury-trial waiver provision in the employment agreement  was in bold, all-capital letters, with straightforward language set apart in a paragraph  labeled "WAIVER OF JURY TRIAL," and the plaintiff did not dispute he signed  the agreement.

At trial, Key testified she read some portions of the Security Officer's Handbook containing the jury trial waiver policy before beginning work and skimmed through the rest, but she was unable to identify when she read the jury trial waiver.  (Doc. 194, Tr. I-106:17-107:1, 107:9-108:5; Doc. 195, Tr. II-23:4-7). Key testified she understood it was a jury trial waiver. (Doc. 194, Tr. I-107:12-14). By that testimony, Key is unable to call into question the issue that she was not aware of the jury waiver when she began employment.

District courts in this circuit have placed some burden of proof on the plaintiff. *See Rob-Wal Inv. Co. v. Jacobsen*, No. 2:09-CV-00055-HGD, 2009 WL 10689142, at *1 (N.D. Ala. Aug. 6, 2009) ( ". . . the  plaintiff must come forward with some proof which calls into question whether the waiver was knowing and voluntarily given.") (quoting *Bank of America v. Florida Glass*, Case No.  8:16-cv-02104-

27AAS, 2017 WL 11017883 * 3 (M.D. Fla. August 8. 2017) (internal citation omitted); *see also Panarella v. Citimortgage*, Inc., 2011 WL 12848536 (M.D. Fla. 2011). Under those decisions the employee must put forth some evidence that the waiver was not knowing and voluntary before the burden shifts to the employer, and Key's trial testimony cannot satisfy that burden.

The other requirement of the district court, which was that the employee's signature page be on the same page as the jury trial waiver (or a reference to the jury trial waiver) is not a requirement found by other courts in this circuit. *Madura v. BAC Home Loans Servicing L.P.*, 851 F. Supp. 2d 1291, 1294-95 (M.D. Fla. 2012) (waiver was conspicuous where contained in a separate paragraph on the eleventh page of a twelve-page mortgage, was in a consistent typeface, was not obscured by other language, was not hidden in a footnote, and appeared on a different page than signatures); *Collins v Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010)[8] (jury trial waiver was conspicuous where the waiver provision was "present in a separate paragraph, printed in a font that is the same size as the rest of the document, located in the last paragraph of a relatively short document, and worded in clear and unambiguous language.") (citations omitted). Notably, in

---

[8] In *Countrywide*, the court noted that the jury trial waiver was located directly above the signatures but did not require that for a court to find a waiver to be "knowing and voluntary." *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d at 1295.

*Kenison v. Schellman & Co., LLC*, the court found enforceable a jury trial waiver contained within a 12-page employment agreement that the plaintiff signed electronically, where the waiver was in capital letters, bold type, and plain language. No. 8:20-CV-1139-MSS-JSS, 2020 WL 10354995, at *1 (M.D. Fla. Nov. 20, 2020). Finally, in *Balchunas v. Bank of Am., N.A.*, the Southern District of Florida granted the defendant's motion to strike a jury trial demand, finding the jury trial waiver was conspicuous when it was included in an entirely separate document than the acknowledgement. No. 2:20-CV-14106, 2020 WL 4718435, at *1 (S.D. Fla. Aug. 13, 2020) (jury trial waiver was contained in a depositor's agreement, which the plaintiff did not sign, instead signing a signature card on her account that itself made no mention of a jury trial waiver). Based on these authorities the Court should vacate the Order denying the motion to strike the jury trial waiver and enforce the Order, thus requiring a new bench trial of Key's § 1981 claim.

B. <u>The Jury's Finding that Key Engaged in Protected Activity under §
1981 Is Contrary to the Great Weight of the Evidence Because She
Never Complained about Race Discrimination</u>.

To prove a retaliation claim under § 1981, Key must prove the following elements: (1) she participated in an activity protected by § 1981; (2) she suffered an adverse employment action, and (3) there is a causal relationship between the participation in the protected activity and the adverse action. *Litman v. Sec'y, of the*

*Navy*, 703 Fed.Appx. 766, 770 (11th Cir. 2017) Here, Key's retaliation claim is based on protesting treatment she received due to her hairstyle.

The first element of a retaliation claim under § 1981 is that Key must engage in protected activity. The protections "only reach individuals who 'explicitly or implicitly communicate [ ] a belief that the practice constitutes unlawful employment discrimination.'" *Furcron v. Mail Centers Plus, LLC,* 843 F.3d at 1311 (quoting EEOC Compliance Manual);[9] *see also Coutu v. Martin County Board of Cty Comms.*, 47 F.3d 1068, 1074 (11th Cir. 1995) (Plaintiff's grievance was not protected activity since there was no allegation or proof of "race or national origin discrimination"); *Jeronimus v. Polk Cnty. Opportunity Council*, 145 Fed.Appx. 319, 326 (11th Cir. 2005) (per curium) (no protected activity based on complaints of being "singled out," subject to "a campaign of harassment," and working in a "hostile environment," but no suggestion that complaint was related to race or sex).

There is no evidence that Key engaged in activity protected by § 1981, which is limited to race. The evidence at trial showed Key complained about her hair or "hair discrimination" and did not complain about race discrimination. The "official" written complaint she submitted stated she was being discriminated against based on her "hairstyle (dreadlocks)." (Doc. 194, Tr. I-63:14-65:7, 125:2-10; PX3 ("I believe

---

[9] *Furcron* is a Title VII case but has been applied in § 1981 cases. *Bell v. City of Auburn*, 722 Fed. Appx. 898. 900 (11th Cir. 2018).

that I have been discriminated against on the basis of my current hairstyle (dreadlocks)"; PX4 (same)). Key's official complaint does not say anything about race. (Doc. 194, Tr. I-125:2-10). Key's rebuttal statement does not mention race or make any complaint related to her race. (PX6; Doc. 194, Tr. I-125:11-126:2). Key's complaint to her trainer was only about her hair. (Doc. 194, Tr. I-77:11-22, 114:25-115:7, 125:20-23 (Key's testimony that she told her trainer she was sent home "because of my hair")). Every discussion about her complaint stated it was about her hair. (Doc. 194, Tr. I-69:21-70:2, 88:1-89:6). Every email Key placed into evidence only talked about her hair and not about her race. (PX5; PX7).[10]

Key's statement to Ray Cureton (Dynamic's District Manager) was that any discrimination was "because of my hair." (Doc. 194, Tr. I-124:19-23). Key never told Ray Cureton she had any complaint related to her race or mentioned race. (Doc. 195, Tr. II-83:5-15; 89:15-17). Key specifically never told Ray Cureton about the reason she thought this was related to race: the Gloria Robinson statement that the Koreans send around memos stating they do not want African Americans wearing dreadlocks. (Doc. 195, Tr. II-89:18-21). Ray Cureton always understood this was an issue about Key's hair. (Doc. 195, Tr. II-80:6-14, 83:1-23, 98:17-19). Sherry

---

[10] Key's response to Dynamic's post-trial motions (doc. 206) recognizes that Key's complaints were only about her hair, describing Key's complaints being "how she was treated due to the natural styling of her hair" and her official complaint being "that she felt she had 'been discriminated against on the basis of [her] current hairstyle (dreadlocks)'" (*Id.* at 16, 19) (quoting PX4).

Spires who was employed in Human Resources at Dynamic similarly understood Key's complaint to be about hair and never about her race. (Doc. 195, Tr. II-121:9-12, 161:23-162:1, 162:12-163:5, 171:6-8). Key never complained to Dynamic that white employees were treated better than African American employees, that other races were treated better than African Americans or that she was subjected to any racial slurs. (Doc. 195, Tr. II-25:12-22). Key further testified that her EEOC Charge was related to her hair. (Doc. 195, Tr. II-2:24-25:1). *See Ceus v. City of Tampa*, 803 Fed. Appx. 235, 246-47 (11th Cir. 2020) (allegations of "racist department" were not protected activity as they were not tied to any specific discriminatory act).

Moreover, the notice of the EEOC Charge relates to a Charge that is based only on a complaint about Key's hair. That does not state a claim under § 1981. *See Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016). A Charge that is based on allegations of actions that are not on a protected ground is not a protected activity. *See Langford v. Magnolia Advanced Materials, Inc.*, 709 Fed. Appx. 639, 642 (11th Cir. 2017). Thus, because Key did not make complaints of race discrimination, she did not engage in protected activity, which is an element of a retaliation claim. The jury verdict in favor of Key on her retaliation claim is due to be vacated and judgment entered for Dynamic.

C.    The Only Evidence Key Presented She Held a Good Faith Belief of Unlawful Race Discrimination Should Have Been Barred by the Best Evidence Rule, Leaving No Shred of Evidence to Prove She Engaged in Activity Protected by § 1981.

To satisfy the first element of a prima facie case, Key must also demonstrate she held a good faith, reasonable belief that the alleged discrimination occurred. *Jefferson v. Sewon America*, 891 F.3d 911, 924 (11th Cir, 2018) A plaintiff must show she subjectively and in good faith believed her employer committed an unlawful employment practice and also that her belief was objectively reasonable. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

Key must not only show that she had a good faith belief that the employer was engaged in unlawful employment practices, but also "that [her] belief was *objectively* reasonable in light of the facts and record presented." *Butler v. Alabama Dept. of Transportation*, 536 F.3d 1209, 1213 (11th Cir. 2008) (emphasis in original). Moreover, "where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer [. . .] an employee's contrary belief that the practice is unlawful is unreasonable." *See id.* at 1214. The complaint Key made that is the subject of the retaliation claim is that she was discriminated against due to her "hair (dreadlocks)." (PX3, PX4). Following the Eleventh Circuit's decision in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (11th Cir. 2016) that a neutral grooming policy prohibiting dreadlocks is not a

form of race discrimination, Key cannot meet that standard. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 and n.2 (11th Cir. 1998), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998) (male employee did not have good belief that hair grooming policy was gender discrimination; "[t]he reasonableness of the plaintiffs' belief in this case is belied by the unanimity with which the courts have declared grooming policies like Blockbuster's non-discriminatory."). This Court in *Harper* noted, "[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d at n.1. Following *Harper* and *Catastrophe Mgmt. Sols.*, 852 F.3d 1018, Key could not have held a good faith reasonable belief Dynamic subjected her to race discrimination; thus the jury verdict should be reversed as contrary to the law and against the great weight of the evidence.

The only evidence Key offered to support her good faith belief is barred by Rule 1002 of the Federal Rules of Evidence (the Best Evidence Rule), and the district court abused its discretion in allowing the testimony into evidence. At a minimum, Dynamic is entitled to a new trial due to the erroneous admission of the evidence. Since this is the only evidence, however, that Key must support her good faith belief, this Court should reverse the jury verdict and instruct the district court to dismiss the Key's § 1981 retaliation claim.

The only evidence Key offered to support that she believed her claim of discrimination due to her hair was because of her race was the statement Key testified Gloria Robinson made to her "the Koreans there – she said they send these memos, and they don't want African Americans wearing their hair like this." (Doc. 194, Tr. I-57:11-25). Key further testified that is the only basis for her belief that she was subjected to race discrimination. (*Id*. at 65:24-66:9, 116:9-117:13). No evidence was presented at trial that such memos even exist. Key testified she never saw the alleged memos and has no information such memos exist separate from Gloria Robinson's statement. (*Id*. at 118:1-119:5). Dynamic filed a Motion in Limine to have the Court exclude the evidence of the statement by Gloria Robinson as being in violation of Rule 1002, Fed. R. Evid. (Doc. 156). The trial court denied the motion. (Appendix B, Oral Order date March 28, 2023 denying Doc. 156).

That testimony is the only basis for Key's 1981 claim to have survived Dynamic's motion for summary judgment. (Doc. 138 at 34-36). In the Order denying Dynamic's motion for judgment as a matter of law, the district court referred twice to the testimony about the memos as the only basis for finding Key had a good faith belief that she was subjected to discrimination and, thus, denying Dynamic's motion. (Doc. 212 at 6).[11] The trial court abused its discretion by allowing the Gloria

---

[11] The district court's Memorandum Opinion and Order denying Dynamic's post-trial motions described Key's testimony as follows: "Key testified that Robinson told her Koreans sent memos saying they did not want African Americans to wear their hair in dreadlocks." (Doc. 212 at 6). The

Robinson statement regarding the contents of the "Koreans'" memos and without that statement there is no evidence for a reasonable juror to find that Key had a good faith belief she was subjected to unlawful race discrimination.

The trial court treated Rule 1002 too narrowly. The Best Evidence Rule applies whenever a party attempts to testify regarding or introduce evidence of the contents of a document and prohibits admission of such testimony. *Roundtree v. Bowers*, No. 22-11557, 2022 WL 17986182 *3 (11th Cir. December 29, 2022) ("This rule applies when a witness seeks to testify about the contents of a recording when the witness was not privy to the events described."); *Benjamin v. Thomas,* 766 Fed. Appx. 834, 837 (11th Cir. 2019) ("[T]he best evidence rule thus applies 'when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself - particularly when the witness was not privy to the events those contents describe.") In *re Lynch*, 755 Fed. Appx. 929 (11th Cir. 2018).

The purpose of the Best-Evidence Rule is to prevent inaccurate information when describing documents. *Gordon v. United States,* 344 U.S. 414, 420 (1953); *see also  Medina v. Multaler*, No. CV 06-00107 MMM (AJWx), 2007 WL 5124009 *1 (C.D. Cal. February 7, 2007) (email stating "that [plaintiff's] pregnancy was 'bad'

---

Memorandum Opinion and Order, however, does not address Dynamic's argument that the Best Evidence Rule barred such testimony.

or 'bad timing' for the company" was barred; such testimony "triggers both of the evidentiary concerns that underpin the best evidence rule, i.e., 'guard[ing] against incomplete or fraudulent proof,' and preventing inaccuracies.") (quotation omitted). Substantial prejudice resulted because Dynamic and the jury were not able to view the alleged memos to determine the content and any context.

The alleged Robinson statement was solely a recitation of the content of an unproduced document. Key needed the testimony of the contents of the documents to demonstrate she held a reasonable good faith belief that her hairstyle complaint was a complaint about race. The only source of the fact that the "Koreans" send out memos stating that they do not want African Americans to wear dreadlocks is Robinson's description of the content of the documents. That fact (and Key's sole basis for claiming her hairstyle claim is related to her race) is not based on any evidence other than Robinson's recitation of content of documents. *See Grange Mutual Casualty Co. v. Slaughter*, 958 F.3d 1050, 1059 (11th Cir, 2020) (the evidence defendants "needed to prove the content of the lease" had to be the lease itself as "[t]he best evidence of the content of the lease is the writing itself.")

Review of an evidentiary ruling is subject to an abuse of discretion standard. *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316 (11th Cir. 2011). Reversal will occur when "'substantial prejudice' results from the District Court's

abuse of discretion.  *Bryant v. Mascara*, 800 Fed. Appx. at 884 (quoting *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

 "[A] district court abuses its discretion '*per se'* when it bases its evidentiary ruling on an erroneous view of the law." *United States v. Holland,* 117 4th at 1355 (quoting *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc*., 389 F.3d 1339, 1345 (11th Cir. 2004)).  Substantial prejudice also exists if the evidentiary ruling impacted or could have impacted the outcome of the trial. *United States v. Barton,* 909 F.3d 1323, 1331 (11th Cir, 2018) ("Substantial prejudice goes to the outcome of the trial . . . ."); *Bryant v. Mascara*, 800 Fed. Appx. at 888 (verdict reversed based on evidence improperly admitted, "the evidence was not so overwhelming that render it implausible that evidence of Mr. Hill's probationary status affected the outcome of the trial."). *see also United States v. Varazo,* 118 F.4th 1346, 1356 (11th Cir. 2024) ("Substantial rights are prejudiced 'when a reasonable probability arises that, but for the [error], the outcome of the trial would have been different.'" (quoting *United States v. Maradiaga*, 987 F.3d 1315, 1324 (11th Cir. 2021)).

Substantial prejudice exists and reversal is particularly appropriate when the district court erroneously allows evidence that relates to the key issue in the case. *See Burchfield v. CSX Transportation*, 636 F.3d 1338 ("By unfairly prejudicing the jury on the pivotal issue in the case, it is likely that the video's admission had a substantial prejudicial effect, warranting reversal."); *United States v. Gaskell*, 985

F.2d 1056, 1061-62 (11th Cir. 1993) (finding reversible error where the erroneously admitted evidence went to the key issue in the case). The admission of the testimony about the memos was clearly prejudicial to Dynamic. That testimony is the only basis for Key to claim she had a good faith belief she was subjected to race discrimination and is the only basis for that claim to have survived.

Key's good faith belief that she was subjected to discrimination is an element of her claim and a key issue. The district court allowing the only evidence available to proof this element in violation of the Best Evidence Rule certainly impacted the outcome. Since that inadmissible evidence is the only evidence of that critical element of a retaliation claim, and such admission was error, the verdict on Key's retaliation claim must be vacated and judgment entered for Dynamic or a new trial ordered.

D.    Dynamic Should Be Awarded a New Trial Due to the Court's Failure to Instruct the Jury Properly on the Elements of a Retaliation Claim and on the Decision in *EEOC v. Catastrophe Mgmt. Sols.* and Due to Improper Comments Made in Closing.

The trial court denied Dynamic's request for jury instructions on the basic elements of a retaliation claim under § 1981 and for an instruction that a neutral grooming policy that prohibits dreadlocks is not a form of race discrimination. *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (11th Cir. 2016). The Court's failure to do so presented a misleading view of the law of the

jury and allowed Key's counsel to make certain arguments during closing that were prejudicial to Dynamic and misleading.

       1.   <u>The Court's jury instruction did not instruct the jury to determine if Key engaged in protected activity by complaining about race discrimination</u>.

The first error in the jury instructions related to the definition of "protected activity". The trial court gave the following instruction:

> For the first element, protected activity, Ms. Key claims that she engaged in protected activity when she complained to Dynamic that she felt discriminated against based on her race. That action is "protected activity" if it was based on Ms. Key's good-faith, reasonable belief that she was discriminated against because of her race. Ms. Key had a "good faith" belief if she honestly believed that she was discriminated against because of her race. Ms. Key had a "reasonable" belief if a reasonable person would, under the circumstances, believe that she was discriminated against because of her race. Ms. Key does not have to prove that she was actually discriminated against because of her race. But she must prove that she had a good-faith, reasonable belief that discrimination occurred.

(Doc. 184 at 6-7). Dynamic objected to this instruction. Through its proposed jury instructions (doc. 161 at 17) and during the Charge Conference(s) (Doc. 194, Tr. I-155:11-13, 161:16-23; Doc. 195, Tr. II-227:4-229:16; Doc. 196, Tr. III-3:24-12:9), Dynamic requested the Court to provide a jury instruction that set forth the requirement that the protected activity requirement for a retaliation claim under § 1981 requires Key to establish that she complained she was subjected to race discrimination. (*Id*.)  As set forth earlier, the Eleventh Circuit law is clear that the

protections "only reach individuals who 'explicitly or implicitly communicate [ ] a belief that the practice constitutes unlawful employment discrimination.'" *Furcron* at 1311.

A jury instruction that stated only that Key has engaged in protected activity if Key has a good faith reasonable belief that she was subjected to race discrimination eliminates entirely a basic requirement for her actions to be protected activity. That instruction is misleading because it states only a portion of the requirements for a complaint to be protected activity in a retaliation claim. Particularly considering the facts and Dynamic's contentions in this case that Key's complaints about her hair were not complaints about race discrimination, it was an abuse of discretion for the Court to refuse to provide an instruction consistent with the Eleventh Circuit's decisions in *Furcron v. Mail Centers Plus, LLC,* and *Coutu v. Martin County Board of Cty Comms.*, that Key must engage in protected activity by complaining of race discrimination. The Court relied on the Eleventh Circuit pattern instructions, but the pattern instructions are not controlling; Eleventh Circuitr law controls. *United States v. Davis*, 779 F.3d 1305, 1311 (11th Cir. 2015) ("The standard instructions of course are not controlling.") This Court has found district courts erred in giving certain Pattern Jury Instructions. *United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (Pattern Jury Instruction omitted a phrase from the statute); *United States v. Dohan*, 508 F.3d 989. 994 (11th Cir. 2007); United *States v.*

*Williams*, 435 Fed. Appx. 868, 870 (11th Cir. 2011)); *United States v. Ruiz*, 59 F.3d 1151 (11th Cir. 1995).[12]

This Court reviews the refusal to provide jury instructions for abuse of discretion. *Brinks v. Direct General Insurance Company,* 38 F.4th 917, 922 (11th Cir. 2022). The abuse of discretion considers if the instructions "fairly and adequately addressed the issue and correctly stated the law." *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th Cir. 1995). An instruction that left out the necessary component that Key must have complained of unlawful race discrimination does not correctly state the law. Dynamic was clearly injured by this as it allowed Key's counsel to make statements in its closing, not supported by the law, that all Key has to prove was that she believed she was subjected to unlawful race discrimination. (Doc. 196, Tr. III-47:5-9; 82:6-11).

This Court reviews the refusal to provide jury instructions for abuse of discretion. *Brinks v. Direct General Insurance Company,* 38 F.4th 917, 922 (11th Cir. 2022). The district court's refusal to provide a jury instruction that Key had to complain about race discrimination was an abuse of discretion. "A refusal to give a requested jury instruction amounts to an abuse of discretion when '(1) the requested

---

[12] This Court has twice referenced the Pattern Jury Instruction given by the district court. *United States v. University of Miami,* No. 23-10526, 2022 WL 3385796 *1 (11th Cir. July 12, 2024) and *Fields v. Department of Juvenile Justice*, 712 Fed.Appx. 934, 937-38 (11th Cir. 2017). Neither case gave the actual Pattern Instruction.

instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.'" *Brinks v. Direct General Insurance Company*, 38 F.4th at 923 (quoting *Lamonica v. Safe Hurricane Shutters, Inc*., 711 F.3d 1299, 1309 (11th Cir. 2013)); *see also Knight through Kerr v. Miami-Dade Cnty*., 856 F.3d 795, 814 (11th Cir. 2017) ("When evaluating a trial court's failure to give a requested instruction, the omission is error only if the requested instruction is correct, not adequately covered by the charge given, and ***involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case***.") (emphasis added) (quotation marks omitted)). Each requirement is met here. The requested instruction stated well-established Eleventh Circuit law on the proof required for a retaliation claim. The issue of whether Key complained of race discrimination was Dynamic's primary defense, having been mentioned in Dynamic's counsel's opening and closing and addressed with the Key and the Dynamic employees who interacted with her. (Doc. 194, Tr. I-36:5-15; 41:6-8; Doc. 196, Tr. III – 61:19-23; 63:7-12).

The failure to give the requested instruction resulted in prejudicial harm.  It removed Dynamic's primary defense that Key never complained of race discrimination and left a jury instruction that was misleading at best and a judicial admission that Key complained of race discrimination at the worst. "Prejudice

results when a district court's failure to give a jury instruction creates a 'misimpression that require[s] a correction'—that is, when it has an "effect on the verdict.'" *Brinks v. Direct General Insurance Company*, 38 F.4th at 924 (quoting *Finnerty v. Stiefel Lab'ys, Inc*., 756 F.3d 1310, 1324 (11th Cir. 2014)). This Court will reverse based on an erroneous jury instruction when it is "'left with a substantial and ineradicable doubt as to whether the district court properly guided the jury.'" *Sanchez v. Discount Rock and Sand, Inc.,* 84 F.4th 1283, 1295-1296 n. 6(11th Cir. 2023) (quotations omitted). The jury heard Key testify that she complained she had been discriminated against due to her hair and based on the jury instruction given without an instruction that her complaint must be about unlawful discrimination, the jury was left with the impression that her complaint only had to be about her hair. So also, the instruction given left the distinct impression that Key only had to prove she had a good faith belief that she was subjected to discrimination. A proper jury instruction has to provide the necessary elements of a claim and cannot negate an element, but must inform the jury of each element of the claim. *Stalley v. Allstate Insurance*, 682 Fed.Appx. 846, 849 (11th Cir. 2017) (proper jury instruction informed jury of each element);[13] *Moucher v. Speedstar Division of AMCA International*, 979 F.2d 823, 827 (11th Cir. 1992) (when the district court's

---

[13] The prejudice to Dynamic was compounded by the district court allowing evidence barred by the Best Evidence Rule as the only evidence of the one element the district court stated in its instruction.

instructions "[negate] an element of the cause of action, our review is appropriate;" where the court's  instructions caused a jury to consider erroneous "criterion of liability" plaintiff was prejudiced and new trial was warranted); *see also Broaddus v. Florida Power Corporation*, 145 F.3d 1283, 1288 (11th Cir. 1998) (jury instruction "caused prejudicial harm" by allowing jury to consider an inappropriate factor as evidence of discrimination.)

Furthermore, there must be some factual basis for the instruction given or the objection party will be subjected to prejudicial harm. "If there is no basis in the record for the instruction given, such error may raise a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations, and reversal may be required." *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995) (internal quotation marks omitted). "A defendant is entitled to have the court instruct the jury on the theory of the defense, as long as it has some basis in the evidence and has legal support." *Id.* at 1195; *see also Thomas v. Home Depot USA, Inc*., 792 Fed.Appx. 722, 725 (11th Cir. 2019) ("Jury instructions must be put in context; we consider the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled." (quoting *Gowski v. Peake*, 682 F.3d 1299, 1315 (11th Cir. 2012)); *Wiedeman v. Canal Ins. Co.*, 770 Fed.Appx. 497, 503 (11th Cir. 2019) (assumption of risk instruction proper when there was "some evidentiary basis" for providing the

instruction).[14] In giving the jury instruction, the district court gave no consideration to the facts or the context. One of the primary issues in the case – if not the primary issue – is whether Key complained of race discrimination. The jury instruction on the elements of a retaliation claim should have acknowledged that and placed that issue for the jury to decide. The instruction given was at best misleading in suggesting that Key had complained about race discrimination because she alleged she had and actually instructs the jury that Key complained of race discrimination. That not only does not consider the facts of the case, but is contrary to the facts of the case where even Key admits she never stated that she was subjected to race discrimination.

The instruction given by the district meets all bases for showing prejudice. The instruction failed to provide the elements of a protected activity, and the instruction has no basis in the record. There is no evidence Key made any complaint of race discrimination or any basis in the record to support the instruction the district court gave that basically informed the jury that Key had complained of race

---

[14] Dynamic is entitled to an instruction of its theory of the case if there is evidence to support it. *See United States v. Presley,* 487 F.3d 1346, 1350 (11th Cir. 2007); *Texas & P. Ry. Co. v. Griffith,* 265 F.2d 489, 494 (5th Cir, 1959) ("We agree with the railroad that as against a mere general or abstract charge a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for the instruction is made.")

discrimination and that all they had to decide was if Key had a good faith basis for such a complaint.

Compounding the problem from refusing to provide any instruction that Key must have complained of race discrimination was the Court's refusal to provide an instruction that under the Eleventh Circuit's decision in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 at 1030, dreadlocks are a hairstyle, not "an immutable characteristic of race," even though they "are a 'natural outgrowth' of the texture of black hair" and that a race-neutral grooming policy to prohibit dreadlocks, without evidence of racially discriminatory application, is not race discrimination. Dynamic specifically requested such an instruction based on the decision in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 at 1030, but the Court denied it. (Doc. 161 at 18; 184 at 6-10.; Doc. 194, Tr. I-154:17-155:10; Vol. II at 218:25-219:12, 25:1-224:4). Without this instruction, the district court deprived the jury of the necessary legal structure to deliberate over the facts to determine if Key's complaint about hair discrimination was activity protected by § 1981. This ruling is reversible error.

2.    District court erred by failing to instruct jury that satisfying the element of causation requires the decision maker have knowledge of the asserted protected activity.

The Court also denied Dynamic's request for an instruction that the decision maker must be aware of the asserted protected activity to satisfy the essential element

of causal connection between the protected activity and the challenged employment decision. The facts here required the decision maker not only to have knowledge that Key complained of hair discrimination (which is not an objectively reasonable complaint of a violation of the law) but also knowledge of her subjective belief as to why she believed hair discrimination was a proxy for race discrimination. *See* Doc. 161 at 25-26, Dynamic's requested instructions and Doc. 184 at 7, district court's final instructions. Dynamic objected to the district court's proposed charge (Doc. 194, Tr. I-155:15-18; Doc. 195, Tr. II-218:25-219:12, 230:10-12) and requested an instruction that informed the jury of this necessary component of the causation element. *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty.*, Fla., 256 F.3d 1095, 1119 (11th Cir. 2001), *rev'd on other grounds* (plaintiff must show that the person taking the adverse action was aware of the protected expression).

Instead of instructing the jury on this element of causation for a retaliation claim, the Court's causation instruction was:

> For the third element, if you find that Ms. Key engaged in protected activity and that Dynamic took an adverse employment action against her, you must decide whether Dynamic took that action because of Ms. Key's protected activity. Put another way, you must decide whether Ms. Key's protected activity was the main reason for Dynamic's decision.

> To determine that Dynamic took an adverse employment action because of Ms. Key's protected activity, you must decide that Dynamic would not have taken the action had Ms. Key not engaged in the protected activity but everything else had been the same.

(Doc. 184 at 7). This vague instruction is exponentially harmful due to the unique facts in this case regarding protected activity and that Dynamic's defense and argument to the jury was Key never complained of race discrimination in violation of § 1981. The district court's failure to instruct the jury on this element did not adequately address the issues or correctly state the law and was therefore an abuse of the court's discretion. *Christopher v. Cutter Laboratories*, 53 F.3d at 1190.

### 3.    Lack of proper jury instruction permitted improper, prejudicial, and false closing arguments by Key's attorney.

The district court's evidentiary errors and refusal to provide the correct jury instructions allowed Key's counsel to make improper and unfairly prejudicial comments to the jury during her closing arguments.

The reasons justifying a new trial include, among other reasons, "improper opening statements or closing arguments." *Rosa v. City of Fort Myers*, No. 2:05–cv–481–FtM–29SPC, 2008 WL 398975, at *2 (M.D. Fla. Feb. 12, 2008) (internal citations omitted). Counsel's comments exacted such injurious influence that these comments alone warrant a new trial. *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261 (11th Cir. 2008) (counsel's comments were "plainly unwarranted and clearly injurious" thus justifying a new trial). The comments in this case were enough to influence improperly the jury.  The Eleventh Circuit has granted new trials based on improper closing arguments in circumstances just such as the ones made by Key's counsel. *See Christopher v. Florida*, 449 F.3d 1360, 1367 (11th Cir. 2006)

("Plaintiff's counsel's improper closing argument prejudiced the substantial rights of Defendants by taking away from Defendants the benefits of the partial summary judgment they had won before trial and by incorrectly expanding the grounds for liability at trial to include grounds ruled out by the court."); *McWhorter v. City of Birmingham*, 906 F.2d 674 (11th Cir. 1990) (same)

        a.      Arguments that the grooming policy itself is race discrimination were improper.

The first improper arguments were Key's counsel's repeated statements that hair discrimination violates § 1981, that Key's complaints about hair discrimination that did not reference race was activity protected by § 1981, and that the Hyundai grooming policy prohibiting dreadlocks discriminated against African Americans in violation of § 1981. (Doc. 196, Tr. III-48:21-24, 49:21-50:4, and 56:18-22). These statements represent to the jury that Hyundai's written grooming policy targeted black women, which is abjectly false; and that any grooming policy that prohibits employees from wearing dreadlocks is an act of racial discrimination, which is contrary to *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 at 1030.

This is problematic and unfairly prejudicial because this Court held that a grooming policy is not racially discriminatory and does not violate § 1981. The district court dismissed at summary judgment Key's race discrimination claim

against Dynamic on the same grounds Key's counsel promoted in closing arguments. (Doc. 138 at 24-31). *Christopher v. Florida*, 449 F.3d at 1367.

        b.    Argument that the Hyundai grooming policy may be the memo referenced by Gloria Robinson.

The second improper comment, which is pure speculation not supported by the facts or the law, is the argument Key's counsel made regarding the "memos" Key testified that Gloria Robinson referenced (and Robinson denied). (Doc. 196, Tr. III-83:12-19). Key's counsel represented that the grooming policy (and/or the prior policy on which it was based) that prohibited personal grooming practices, including dreadlocks, could in fact be the memo from the "Koreans." Those statements are a direct misrepresentation of evidence. No witness at trial even suggested that the "little memos" Key testified that Robinson referenced was in fact the HEA grooming policy. (DX5). Key's statements also amount to an erroneous statement of law. Key's counsel took every opportunity to lead the jury to believe that a grooming policy prohibiting dreadlocks is inherently racially discriminatory to lead the jury to conclude that any African American person's complaints about such a grooming policy amounted to protected activity without any mention of race.[15]

---

[15] This demonstrates again the reason the best evidence rule and its rationale should apply to the testimony about the memos. Key's counsel would not be able to engage in such speculation if Key had been required to produce the memos instead of offering second-hand testimony that described the contents.

E.    <u>The Trial Court Abused Its Discretion in Not Reversing or Remitting the
      Jury Award of Compensatory Emotional Damages</u>.

In this case, the jury awarded damages for emotional distress damages in the

amount of $214,864.00. (Doc. 186, p. 2, no. 6). In the case of emotional distress

resulting from a constitutional violation, this Court is guided by the Supreme Court's

decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978),

"which concluded that compensatory damages for emotional distress may not be

presumed from every constitutional violation, but must be proven by competent,

sufficient evidence." *Akouri v. State of Fla. Dep't of Transp*., 408 F.3d 1338, 1345

(11th Cir. 2005) (setting aside jury award of compensatory emotional damages in a

Title VII/§ 1981 case due to insufficient evidence).

Here, the only evidence Key presented that could conceivably support an

emotional distress compensatory damage award was not evidence of harm from the

adverse employment action that the jury decided. She testified about harm suffered

from Hyundai's decision to remove her from her assignment at the Hyundai plant

and her distress from being told her hairstyle was not acceptable. She did not testify

that she experienced emotional distress from Dynamic not reassigning her to another

position, which is the sole adverse employment action she challenged at trial and on

which the jury decided in her favor.  Plaintiff's testimony about how she felt was in

response to what she perceived as discrimination, not in response to the alleged

retaliatory adverse action of failure to reassign amounting to termination. (Doc. 195,

46

Tr., I-60:23-61:1; 67:4-21; 68:15-71:17; 87:10-88:19). While Key testified that Cureton never contacted her about another position, the feelings she described happened on August 1, 2017, immediately after leaving the Dynamic office, which was before she claims she experienced retaliation of not being reassigned to another job. The feelings she described were in response to her being removed from the Hyundai plant by HEA – because when she left the Dynamic office, she did not believe she had been terminated.

In addition, Key's testimony must consist of more than just conclusory statements that she suffered emotional distress. *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d at 1345. As demonstrated by *Ash v. Tyson*, 664 F.3d 883, 899-900 (11th Cir. 2011), Key must present substantial evidence of emotional distress to recover substantial award. In *Ash*, this Court affirmed a compensatory damage award of $300,000.00 when the plaintiff and his wife testified he became physically ill, lost 40 pounds in five months, lost self-esteem, heard jokes about his promotion, was degraded over having to train someone else for his job, withdrew from relationships with his family, and his relationships deteriorated. In contrast, Key testified only that she was upset because she could not wear her hair in dreadlocks.

Key failed to present evidence she sought counseling for her alleged emotional pain. The context of the emotional distress was actual discrimination she claims to have suffered, which is not relevant because the district court dismissed

47

her race discrimination claim at summary judgment. Key did not present witnesses or evidence to corroborate her painful feelings. And, most crucially, Key's testimony of her emotional pain did not establish any nexus to the only employment action at issue in the trial and upon with the jury found liability: Dynamic's failure to reassign her thereby allegedly terminating her. *See Ash v. Tyson Foods, Inc.*, 129 Fed.Appx. at 534–36. Key's award of $214,000.00 in compensatory damages exceeded the limits of the evidence. To the extent the Court affirm an award of compensatory emotional damages, the amount should be reduced in accordance with Key's scant evidence of emotional pain.

F.    <u>The Trial Court Abused Its Discretion in Not Reversing or Remitting the Jury Award of Punitive Damages.</u>

The district court clearly abused its discretion in denying Dynamic's motion to reverse or remit the jury's award of punitive damages. (Doc. 212 at 8). "Once a defendant is found liable for the plaintiff's injury, the District Court has a great deal of discretion in deciding the level of damages to be awarded," *Ferrill v. Parker Group, Inc*., 168 F.3d 468, 476 (11th Cir. 1999) (reversing the district court that refused to exercise that discretion where the evidence did not support punitive damages award). *See Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)(remittitur order is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence) The district court abused its

discretion in upholding the jury's award of punitive damages against Dynamic on three grounds.

### a.    Insufficient evidence of punitive damages.

In this case, the jury assessed against Dynamic punitive damages in the amount of $511,200.00. (Doc. 185 at p. 2). "A plaintiff seeking punitive damages against an employer for job discrimination faces daunting obstacles under the law established by decisions of the Supreme Court and this Court. . . and [p]unitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing." *Ash v. Tyson Foods, Inc*., 664 F.3d at 900. "The Supreme Court has directed that, for the issue of punitive damages to reach the jury in a section 1981 case, the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights." *Ash* at 900. Here, Key failed to present any evidence that Dynamic knew it was violating federal law when Cureton did not reassign Key to another job or that it acted with reckless indifference to her federal rights.

### b.    Constitutionally excessive punitive damages.

Awards of punitive damages are subject to constitutional limits. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). "The Supreme Court has held that due process forbids the imposition of grossly excessive or arbitrary awards of punitive damages." *Goldsmith v. Bagby Elevator Co*., 513

F.3d at 1282–83. Because a punitive damages award "is an exercise of government power, it must comport with constitutional due process." *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021). "A 'grossly excessive' punitive damages award is one that 'furthers no legitimate purpose and constitutes an arbitrary deprivation of property,' thereby violating due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520, 155 L.Ed.2d 585 (2003).

The first guidepost considers the reprehensibility of the defendant's conduct, which is the "most important indicium of the reasonableness of a punitive damages award." *Id.* at 419 (quotation marks omitted). There are five specific factors this Court should consider under the reprehensibility guidepost: "(1) whether 'the harm caused was physical as opposed to economic'; (2) whether 'the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others'; (3) whether 'the target of the conduct had financial vulnerability'; (4) whether 'the conduct involved repeated actions or was an isolated incident'; and (5) whether 'the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Cote v. Philip Morris USA, Inc.*, 985 F.3d at 847 (quoting *Myers v. Cent. Fla. Inv., Inc.*, 592 F.3d 1201, 1219 (11th Cir. 2010)).

There is no requirement that a certain number of the factors be present, but "reprehensibility grows more likely as more factors are present." *Id.* Key has presented no evidence to satisfy any reprehensibility factor. Key did not allege she

suffered physical harm and there was no evidence Dynamic disregarded the health or safety of others, that Key was financially vulnerable, that there were repeated incidents of retaliation, or that Dynamic harbored malicious intent to harm or deceive Key.

Weighing against reprehensibility is the evidence that Dynamic publishes anti-race discrimination, anti-harassment, and anti-retaliation policies in various material provided to employees upon hire and conducts annual training of supervisors and managers. (PX17 at 43-44; DX6; DX13; DX21; DX47; Doc. 195, Tr. II-23:19-24:13; DX49: DX50; Doc. 196, Tr. III-24:5-25:3; DX52; Doc. 196, Tr. III-25:6-5-26:11; Doc. 194 Tr. I-104:12-105:19; Doc. 195, Tr. II-21:21-23:18).

## CONCLUSION

For the reasons stated above, Dynamic is entitled to have judgment entered in its favor, a new trial ordered or the damages remitted.

CERTIFICATE OF COMPLIANCE

This document contains 12,497 words and thus complies with the word limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: November 27, 2024

Respectfully submitted,

*/s/Wesley C. Redmond*
OF COUNSEL

52

## CERTIFICATE OF SERVICE

I certify that, on November 27, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Counsel for all parties registered as CM/ECF users will be served with the foregoing document by the Court's CM/ECF system.

/s/Wesley C. Redmond
OF COUNSEL

53