Appeal No. 24-11069

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

DAVITA KEY

Plaintiff/Appellee

v.

DYNAMIC SECURITY, INC.

Defendant/Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CASE NO.: 2:19-cv-767-ECM

CHIEF JUDGE EMILY C. MARKS, PRESIDING

_____

APPELLANT'S REPLY BRIEF

_____

Wesley C. Redmond
Susan W. Bullock
FORDHARRISION, LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
T (205) 244-5905/(205) 244-5904
F (205) 244-5901
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellant Dynamic Security, Inc.*

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant/Appellant Dynamic Security, Inc. submits the following list of the trial judge, attorneys, individuals, associations, firms, partnerships, and corporations that have an interest in the outcome of this case on appeal:

Bae, Yurie Yeoul (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bond, Cortlin (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bradley Arant Boult Cummings, LLP (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

Brown, Whitney R. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Bullock, Susan W. (Attorney for Defendant/Appellant Dynamic Security, Inc.);

DeWeese & Bae, LLC (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

DeWeese, Richard L., Jr. (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Doyle, The Honorable Stephen M., United States Magistrate Judge for the Middle District of Alabama;

Dynamic Security, Inc. (Defendant/Appellant);

FordHarrison, LLP (Counsel for Defendant/Appellant Dynamic Security, Inc.);

Heather Leonard, P.C. (Counsel for Plaintiff/Appellee Davita M. Key);

Hyundai ENG America, Inc. (Defendant/Appellee);

Hyundai Motor Manufacturing Alabama, LLC (Defendant/Appellee);

Key, Davita M. (Plaintiff/Appellee);

Lehr Middlebrooks Vreeland & Thompson, P.C. (Counsel for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Leonard, Heather (Attorney for Plaintiff/Appellee Davita M. Key);

Marks, The Honorable Emily C., Chief Judge, United States District Court for the Middle District of Alabama;

Middlebrooks, David J. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Miller, T. Matthew (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Palmer Law, LLC (Counsel for Plaintiff/Appellee Davita M. Key);

Palmer, Leslie A. (Attorney for Plaintiff/Appellee Davita M. Key);

Redmond, Wesley C. (Attorney for Defendant/Appellant Dynamic Security, Inc.);

Smith, Scott Burnett (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Vaughn, Sarahanne Young (Attorney for Defendant/Appellee Hyundai ENG America, Inc.).

Pursuant to Fed. R. App. P. 26.1-3(b), Dynamic Security, Inc., states that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Corporate Disclosure. Pursuant to Fed. R. App. P. 26.1, and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, Defendant/Appellant Dynamic Security, Inc., submits this Corporate Disclosure, stating as follows: Dynamic Security, Inc. has not issued shares or debt securities to the public. Furthermore, no parent, subsidiary, or affiliate of Dynamic Security, Inc. has issued shares of debt securities to the public, nor does any publicly owned company own ten percent or more of the stock of the Dynamic Security, Inc. Defendant/Appellant Dynamic Security, Inc. is not aware of any other entity likely to be an active participant in the proceedings.

*/s/ Wesley C. Redmond*
Wesley C. Redmond
Susan W. Bullock
FORDHARRISON, LLP

C-3

420 20th Street North, Suite 2560
Birmingham, AL  35203
T (205) 244-5905/(205) 244-5904
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellant Dynamic Security, Inc.*

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................C-1

CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CONTENTS......................................................................................... i

TABLE OF CITATIONS AND AUTHORITIES .................................................... ii

ARGUMENT AND CITATIONS OF AUTHORITY ..............................................1

I.    KEY FAILED TO MAKE ANY EVIDENTIARY SHOWING TO
OVERCOME HER TESTIMONY THAT SHE UNDERSTOOD THE MEANING
OF DYNAMIC'S JURY TRIAL WAIVER. ..............................................................1

II.   KEY DOES NOT REBUT DYNAMIC'S ARGUMENT THAT THE
EVIDENCE OF PROTECTED ACTIVITY IS INSUFFICIENT TO SUSTAIN A
JURY VERDICT ON HER § 1981 RETALIATION CLAIM..................................5

III.    KEY DOES NOT ADDRESS OR REBUT DYNAMIC'S ARGUMENT
THAT THE BEST EVIDENCE RULE PRECLUDES HER FROM
ESTABLISHING THAT SHE HAD A GOOD FAITH BASIS FOR
DISCRIMINATION. ................................................................................................14

IV.    THE JURY INSTRUCTIONS FAILED TO INFORM THE JURY
ADEQUATELY OF THE LAW. ............................................................................17

V.   COUNSEL'S IMPROPER COMMENTS MADE DURING CLOSING
ARGUMENT, WHICH WERE MADE POSSIBLE BY MISLEADING JURY
INSTRUCTIONS, SUBSTANTIALLY PREJUDICED DYNAMIC....................21

VI.    KEY DOES NOT IDENTIFY EVIDENCE OF ANY EMOTIONAL
DISTRESS RESULTING FROM ANY RETALIATION. .....................................22

VII.    KEY HAS OFFERED NO EVIDENCE TO COUNTER DYNAMIC'S
ARGUMENTS THAT PUNITIVE DAMAGES SHOULD BE REVERSED OR
REMITTED. ...........................................................................................................24

VIII.  CONCLUSION............................................................................................26

CERTIFICATE OF COMPLIANCE.....................................................................27

CERTIFICATE OF SERVICE .............................................................................28

TABLE OF CITATIONS AND AUTHORITIES

Page(s)

Cases

*Akouri v. State of Fla. Dep't of Transp.*,
    408 F.3d 1338 (11th Cir. 2005) ........................................................................22
*Benjamin v. Thomas,*
    766 Fed. Appx. 834 (11th Cir. 2019)................................................................15
*Burns v. Lawther*,
    53 F.3d 1237 (11th Cir. 1995) .............................................................................1
*Campbell*,
    538 U.S., 123 S.Ct. 1513 .................................................................................25
*Catastrophe Mgmt.,*
    852 F.3d ................................................................................... 9, 10, 11
*Ceus v. City of Tampa,*
    803 Fed. Appx. 235 (11th Cir. 2020)..................................................................6
*Clover v. Total Sys. Serv., Inc.*,
    176 F.3d 1346 (11th Cir. 1999) ................................................................ 14, 15
*Coutu v. Martin County Board of Cty Comms.*,
    47 F.3d 1068 (11th Cir. 1995) .............................................................................6
*Duncan v. Alabama*,
    734 F. App'x 637 (11th Cir. 2018) ....................................................................18
*Furcron v. Mail Centers Plus, LLC*,
    843 F.3d 1295 (11th Cir. 2016) ............................................... 6, 7, 13, 18
*Harper v. Blockbuster Ent. Corp.*,
    139 F.3d 1385 (11th Cir. 1998) .........................................................................11
*Howard v. Walgreen Co.*,
    605 F.2d 1239 (11th Cir. 2010) ........................................................................14
*Jeronimus v. Polk Cnty. Opportunity Council*,
    145 Fed.Appx. 319 (11th Cir. 2005)....................................................................6
*Little v. United Techs., Carrier Transicold Div.*,
    103 F.3d 956 (11th Cir. 1997) ......................................................................7, 11
*Patterson v. Georgia Pacific, LLC*,
    38 F.4th 1336 ................................................................................18
*Roundtree v. Bowers*,
    No. 22-11557, 2022 WL 17986182 (11th Cir. December 29, 2022) ...................15
*Sykes v. McDowell*,
    786 F.2d 1098 (11th Cir. 1986) ........................................................................24

*Trimble v. Fort Valley State University*,
   No. 22-13278, 2024 WL 1266184 (11th Cir. March 26, 2024) ...........................8
*United States v. Howard*,
   953 F.2d 610 (11th Cir. 1992) ............................................................................16
*Williams v. First Advantage LNS Screening Solutions*,
   947 F.3d 735, (11th Cir. 2020) ...........................................................................26

Rules

11th Cir. R. 26.1-1, 26.1-2 and 26.1-3 ....................................................................3
Fed. R. App. P. 32(a)(5) ..........................................................................................27
Fed. R. App. P. 32(a)(6) ..........................................................................................27
Fed. R. App. P. 32(a)(7)(B) .....................................................................................27
Fed. R. App. P. 32(f) ...............................................................................................27
Rule 26.1 of the Federal Rules of Appellate Procedure ......................................1, 3
Rule 38 of the Federal Rules of Civil Procedure .....................................................1

ARGUMENT AND CITATIONS OF AUTHORITY

I.    KEY FAILED TO MAKE ANY EVIDENTIARY SHOWING TO OVERCOME HER TESTIMONY THAT SHE UNDERSTOOD THE MEANING OF DYNAMIC'S JURY TRIAL WAIVER.

Dynamic appealed the Court's denial of its motion to strike Key's jury trial demand on grounds that she waived her right to a jury trial and appealed the resulting jury verdict on the same grounds.  Key makes two arguments in opposition. First, Key contends that, according to a heightened scrutiny standard, Dynamic has not established Key made a knowing and voluntary waiver. (Doc. 50 at 16-17).  Second, Key contends that, as a matter of law, the format and language of the jury trial waiver provision in Dynamic's employee handbook is not sufficiently conspicuous or unambiguous to amount to a knowing and voluntary waiver. These contentions blatantly ignore the facts in the record and the application of the law to those facts.

First, the single case Key cites for her "heightened scrutiny" argument, *Burns v. Lawther*, 53 F.3d 1237 (11th Cir. 1995),[1] did not involve a party indisputably signing a separate document that contained a jury trial waiver, but was an application of Rule 38 of the Federal Rules of Civil Procedure and whether the party requested a jury trial as required by the Federal Rules of Civil Procedure. *Id.* at 1241. That decision thus has no application to Key's situation.

---

[1] Doc. 50, Appellee's Brief at 26.

Second, Key's argument rests on facts contrary to the evidentiary record. Appellee's Brief contends that Key's trial testimony "confirmed Key could not state when she read the waiver, or that *she knowingly and voluntarily waived her right to a jury trial*." but she did not support her assertion with a record citation. (Doc. 50) (emphasis added). And Key's Statement of Facts does not cite to this purported trial testimony. (Doc. 50 at 14-24). In fact, Key's trial testimony contradicts her assertion that she did not knowingly and voluntarily waive her right to a jury trial. Key testified at trial she understood it was a jury trial waiver. (Doc. 194, Tr. I-107:12-14). Dynamic's appeal of this issue relied on this trial testimony as set forth in its Principal Brief (Doc. 36 at 36), but Appellee's Brief does not address this evidence.[2]

Similarly, Key argues that "Dynamic presented no evidence that Key read and understood the waiver contained in the Handbook when she signed the handbook receipt. . . ." but again offers no citation to support this contention. (Doc. 50 at 27). Contrary to that assertion, Dynamic offered evidence that Key read the Jury Trial Waiver and understood she was waiving her right to a jury trial. (Doc. 36 at 10-12, 36 (citing Doc. 75-1 at 55:10-16; Doc. 194, Tr. I, 107:12-14)).

Key's arguments disregard her own testimony in which she agreed, under oath, that she read the jury trial waiver and understood its meaning. (Doc. 75-1 at

---

[2] This evidence is also consistent with Key's deposition testimony that she read the Jury Trial Waiver and understood what it meant. (Doc. 75-1 at 55:10-16).

55:10-16; Doc. 194, Tr. I, 107:12-14). This admission removes any need to examine the format in which Dynamic presented the waiver to her. Her arguments that the font size of the waiver language was too small and that the waiver did not appear on the same page as her signature are inapposite where she had already agreed she understood the meaning of what she signed. Her arguments are factors relevant only where the employee testifies she did not understand the intended waiver as waiving her right to a jury trial. The District Court's analysis should not have reached the point of examining the conspicuity, presentation, or location of the waiver language because Key testified she read Dynamic's jury waiver and understood what it meant.

Key's argument that the language of the jury waiver is "fatally ambiguous" likewise has no merit. (Doc. 50 at 18). She argues this sentence of the provision prevents knowing waiver: "By waiving the right to a jury trial an employee is not limiting their right to trial by judge." (*Id*.) Under the heading, "Jury Trial Waiver" and specifically confirming the waiving of the right to a jury trial, this phrase makes clear that the employee waives only trial by jury and does not place any limitation on Key's right to take legal action and pursue  trial by judge. That phrase thus can only have one meaning and, therefore, is not ambiguous. Under these facts, the waiver should be enforced.

Thus the only dispute Key presents is whether she signed the jury trial waiver before, during or after she was employed by Dynamic, but Key fails to present any

supporting evidence she did not read it until after she began working. Prior to the trial in her opposition to Dynamic's motion to strike Key's jury trial demand, Key presented no evidence to the District Court about when she read the jury trial demand. At trial, Key testified she read the grooming policy in the handbook before her first day at work but could not remember if she read on the same occasion the jury waiver that was in the same handbook; regardless, she admits she possessed the jury trial waiver <u>before</u> she started work and that she had read the jury trial waiver but would not admit she read it before she started work.

Key wants Dynamic to bear the entire burden of proof so she can defeat waiver simply by saying she did not recall if she read it before she signed it. Although the Eleventh Circuit has not decided this issue, district courts in this circuit have held a plaintiff must make some showing to establish that a jury trial waiver is not enforceable. Key's testimony that she cannot recall the date she read the jury trial waiver is an insufficient showing to overcome her other testimony that she signed an acknowledgement, that she received the employee handbook containing the waiver before she started work, that she had the document in her possession before she started work, and that she understands the language of the jury trial waiver means that she was waiving her right to a jury trial.

Key's alternative argument that, if this Court finds the jury verdict enforceable, this Court should order the District Court to treat the jury as an advisory

jury and adopt the jury verdict completely misses the procedure and reason for Rule 39. Key appears to be arguing that the District Court's refusal to strike the jury demand is some form of harmless error now that a jury verdict has been entered. First, that is an issue to be decided by the District Court upon remand; Key has offered no authority for this Court to render such an order. Second, Dynamic will be prejudiced by and opposes any effort for the jury verdict to be treated as an advisory jury after its verdict was entered, and Key offers no legal authority for this to occur. A case will be tried and handled separately if the matter is not being tried to a jury. Thus, the refusal to strike the jury demand would not be harmless error.

## II.    KEY DOES NOT REBUT DYNAMIC'S ARGUMENT THAT THE EVIDENCE OF PROTECTED ACTIVITY IS INSUFFICIENT TO SUSTAIN A JURY VERDICT ON HER § 1981 RETALIATION CLAIM.

Dynamic's first substantive ground for appeal and reversal of the jury verdict is that Key failed to present at trial evidence that she engaged in protected activity by complaining about race discrimination, instead testifying she complained about discrimination due to her hair. (Doc. 36 at 38-41). Appellee's Brief does not even address, much less rebut, this argument or the supporting evidence. Key does not provide facts, citation to the record or legal authority showing she complained about race discrimination or her complaints about her hair were actually complaints about race discrimination.

Key titled Section II of her Brief, "Key Engaged in Protected Activity by Complaining of Race Discrimination" (Doc. 50, Appellee's Brief at 29), which indicates she recognizes Dynamic's position that her complaints about the grooming policy prohibiting her hairstyle are not sufficient evidence she complained about illegal race discrimination. But Key's argument under this section supports a different premise – that <u>she</u> had a <u>good faith belief</u> that hair discrimination was illegal. Analysis of whether a plaintiff established she engaged in protected activity begins with the content of the complaint. Dynamic argued that Key did not communicate a complaint about *race discrimination*, relying on the line of cases holding that an employee must have articulated that she was subjected to particular type of discrimination. *Coutu v. Martin County Board of Cty Comms.*, 47 F.3d 1068, 1074 (11th Cir. 1995) (Plaintiff's grievance was not protected activity since there was no allegation or proof of "race or national origin discrimination"); *see also Ceus v. City of Tampa*, 803 Fed. Appx. 235, 246-47 (11th Cir. 2020); *Jeronimus v. Polk Cnty. Opportunity Council*, 145 Fed.Appx. 319, 326 (11th Cir. 2005).

Whether intentional or by mistake, Key does not recognize that whether she complained about illegal race discrimination and whether she had a good faith belief she was subjected to race discrimination are two separate issues. In *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016), cited by both parties,[3] this Court

---

[3] Doc. 36 at 24; Doc. 50 at 25.

specifically recognized the distinction. After stating that a plaintiff must "'explicitly or implicitly communicate[ ] a belief that the practice constitutes unlawful employment discrimination," this Court states, "*in addition,* a plaintiff is required to show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Furcron v. Mail Centers Plus, LLC*, 843 F.3d at 1311(quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997))(emphasis added).

The entirety of Key's Brief on this issue is that Key had a good faith basis for her claims. (Doc. 50 29-36). The argument in this section begins by saying, "Dynamic argued that Key did not engage in protected activity by maintaining that a complaint about differential treatment because of the natural styling of her hair cannot, as a matter of law, be a complaint protected by § 1981." (*Id*. at 19). The only possibly relevant reference in Key's Brief to this dispositive issue is her statement that "[a] plaintiff can show that she engaged in a statutorily protected activity if her complaint 'explicitly or implicitly communicate[s] a *belief* that the practice constitutes unlawful employment discrimination.'" (*Id*. at 25 (citing *Furcron* at 1311)). But Key does not go on to show how Key communicated to Dynamic a belief that it unlawfully discriminated against her because of her race. Key does not counter the overwhelming evidence Dynamic presented that any complaints

protested the grooming policy's prohibition of her hairstyle.  Key does not address the case law throughout this Court that, to prove a § 1981 retaliation claim, a plaintiff must have complained about race discrimination. *See, e.g., Trimble v. Fort Valley State University*, No. 22-13278, 2024 WL 1266184 *7 (11th Cir. March 26, 2024) Crucially, the <u>only</u> basis Key asserts for her belief that she believed her claim of discrimination because of her hair was the statement Key testified Robinson made about the Korean memos. (Doc. 194, Tr. I-57:11-25, 65:24-66:9, 116:9-117:13). Evidence that Key <u>believed</u> she suffered race discrimination does not alone satisfy the essential "protected activity" element of her retaliation claim. She must also present evidence she communicated to Dynamic her belief that she suffered race discrimination, which she did not do.

If Key were able to establish she communicated to Dynamic a complaint of race discrimination, which she did not do, she can then move to her argument that her complaint of race discrimination was based on a good faith belief of its unlawfulness and that her belief was objectively reasonable. Key's Brief acknowledges that this Court in *Catastrophe Management* upheld as lawful an employer's race-neutral "no-dreadlocks grooming policy." (Doc. 50 at 20-21). She urges, "[b]ecause the facts of this case include testimony about the texture of Key's hair, the facts differ from those in *Catastrophe Management*, and it's [*sic*.] holding is not controlling." (*Id*. at 22). Both articulated justifications for side-stepping the

8

binding precent of *Catastrophe Management* are arguments regarding the subjective element. Key in essence urges this Court not only to ignore *Catastrophe Management* but to also ignore the binding precedent that she must present evidence that her subjective belief was objectively reasonable.

Key argues *Catastrophe Management* does not apply for two reasons: (1) unlike the plaintiff in *Catastrophe Management*, her complaint about a grooming policy banning dreadlocks was related to the propensity of her hair to form dreadlocks as an immutable trait of race, and (2) she presented evidence permitting the jury to infer that Hyundai's grooming policy prohibiting dreadlocks was a proxy for race discrimination. (Doc. 50 at 31-32). These arguments are unconvincing.

Key's subjective belief that using chemicals to prevent dreadlocks makes her dreadlock hairstyle an immutable characteristic of her race does not conflict with *Catastrophe Mgmt.* 852 F.3d at 1030. Key acknowledges the plaintiff in *Catastrophe Management* argued his dreadlocks were a feature of his racial heritage but she contends she is arguing her style is not a choice, and she argues the texture of her own hair is what makes it an immutable characteristic of race. (Doc. 50 at 21). This Court addressed Key's very argument for bypassing the *Catastrophe Management* decision, holding: "[t]hat dreadlocks are a 'natural outgrowth' of the _texture_ of black hair does not make them an immutable characteristic of race." The only difference between Key and the plaintiff in *Catastrophe Management* is their subjective belief

9

about immutability. Regardless of whether Key's hair is natural or chemically treated, she admitted she chose to wear her hair in dreadlocks as a style. Key's description of her hair and her testimony about her hair shows she chose this style and that it was not immutable. Key's Brief uses language indicative of choice: that she has worn this natural style since she was 18, that she "palm rolls" her hair, and that she twists her hair to form locks. (Doc. 50 at 4). Her statement that the texture of her hair would lock if she did not twist it does not translate to a general rule that dreadlocks are immutable and specific to black hair. She did not offer evidence that white hair would not be similar. Most importantly, when she chose to submit a formal written complaint, the language she used was, "I believe I have been discriminated against on the basis of my *current hairstyle*, dreadlocks." (Doc. 187-6-3 (Key's written complaint)). This description does not suggest she believes dreadlocks are an immutable trait of race but were a fashion choice.

Key's arguments are insufficient to overcome binding precedent of the *Catastrophe Management* decision. This Court's precedent holds that, where the court has held a grooming policy to be lawful, an employee seeking to demonstrate that she protested the employer's enforcement of that policy cannot constitute a good faith, reasonable belief that employer was engaged in unlawful employment practices. It is insufficient for an employee "to allege [her] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief,

10

though perhaps mistaken, was objectively reasonable." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) ("The reasonableness of the plaintiff's belief in this case is belied by the unanimity with which the court have declared grooming policies like [defendant's] non-discriminatory.") (quoting *Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956, 960 (11th Cir. 1997)). Her opinion about the texture of her own hair and its propensity for forming dreadlocks may have been sincerely held, but it does not support her belief that Hyundai's grooming policy was racially discriminatory was objectively reasonable. This Court's holding in *Catastrophe Mgmt.* goes further than simply responding to the EEOC's argument that the plaintiff's hairstyle was a choice based on his race. 852 F.3d at 1030.

Her argument that she presented evidence that her belief was objectively reasonable, thereby permitting the jury to infer that Hyundai's grooming policy prohibiting dreadlocks was a proxy for race discrimination, is merely a creative repackaging of her evidence as to her subjective belief. She essentially argues that, because she held a subjective belief that her dreadlocks are an immutable trait of her race, it is objectively reasonable for her to believe the grooming policy was racially discriminatory and that all follow-up communications reflecting back on her original complaint of hair discrimination confirm that her belief was reasonable. Key failed to present sufficient evidence to establish she had a subjective, good-faith belief the

policy was unlawful and therefore failed as a matter of law to show she engaged in protected conduct.

Moreover, and most importantly, Key's argument about her good faith belief continues to rely on the alleged statement by Gloria Robinson that the Koreans send little memos saying they do not want African Americans wearing dreadlocks. Key testified her only basis  for her belief that her claim of discrimination because of her hair was a race issue was the statement Key testified Robinson made about the Korean memos. (Doc. 194, Tr. I-57:11-25, 65:24-66:9, 116:9-117:13). Furthermore, none of the facts set forth by Key to establish her good faith belief explicitly or implicitly communicate an internal complaint of unlawful race discrimination. (Doc. 50 at 22-24).[4]  In an attempt to establish a good faith belief that she was subjected to race discrimination, Key relies on the Robinson comment stating as follows:

> These facts viewed cumulatively and in context, *especially in proximity between the complaint and Robinson's alleged statement about Koreans not liking African American wearing their hair in dreadlocks*, demonstrated that there was a question of fact whether Key had both a subjective and objective good faith belief that the way she was treated was unlawful race discrimination.

(*Id*. at 24) (emphasis added).

---

[4] The facts refer to the EEOC Charge filed by Key.  The trial court granted Dynamic's motion in limine and ruled the EEOC Charge could not be considered as a separate act of protected activity. (Doc. 42-1 (Appendix) at 115).

Key also attempts to convince this Court that the trial court found Key's complaint to be reasonable based on viewing Key's complaint along with "other evidence" "and '"in its social context.'" (Doc. 50 at 32) (quoting *Furcron* at 1312). That argument left out the trial court's specific holding that Key's belief that she was subjected to race discrimination was based on the Robinson comment. (Doc. 212 at 6) ("A reasonable jury could take Key's complaint to Cureton 'in its social context' – with its temporal proximity to the alleged statement about how "the Koreans' did not want 'African Americans' wearing dreadlocks – to find that Key and Cureton reasonably believed such a complaint was about race discrimination."). The trial court did not explain what it meant by "social context," but the trial court's Order had already stated as the only evidence that "Key *believed* a grooming policy was *not applied* even handedly" Key's testimony "that Robinson told her Koreans sent memos saying they did not want African Americans to wear their hair in dreadlocks." (*Id*.) Such testimony should have been excluded as a violation of the Best Evidence Rule. (Doc. 36 at 27-33). The exclusion of the Robinson comment requires judgment to be entered in Dynamic's favor.

To the extent Key is arguing that her belief her complaint about her hair was the equivalent to a complaint about her race (which Dynamic denies) has and thus she engaged in protected activity, Key has not offered any evidence that Dynamic considered Key's complaint to be about her race. To the contrary, all of the evidence

has been that every complaint Key made was about her hair and that Dynamic did not consider Key's complaints about her hair to be about her race. (Doc. 36 at 24-26; Doc. 195, Tr. II-80:6-14, 83:1-23, 98:17-19121:9-12, 161:23-162:1, 162:12-163:5, 171:6-8). Key also does not provide any legal support for this significant and unprecedented extension of the requirement to engage in protected activity.

Key's final argument that her belief is reasonable because the law on the issue of hair and grooming polices is unsettled with some other jurisdiction recognizing hair discrimination is contrary to the law and Key's own testimony. The reasonableness of Key's belief is to be "measured against existing substantive law." *Howard v. Walgreen Co.*, 605 F.2d 1239, 1245 (11th Cir. 2010) (quoting *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

III.    KEY DOES NOT ADDRESS OR REBUT DYNAMIC'S ARGUMENT THAT THE BEST EVIDENCE RULE PRECLUDES HER FROM ESTABLISHING THAT SHE HAD A GOOD FAITH BASIS FOR DISCRIMINATION.

As Dynamic demonstrated in its principal brief, the only basis the trial court recognized for Key having a good faith basis that she was subjected to race discrimination was Gloria Robinson's statement describing the content of memos regarding African Americans and dreadlocks. (50 at 44). Key's argument for allowing such testimony is that it should be allowed to show "the effect on Key" in demonstrating Key had a good faith belief she was subjected to discrimination (50 at 26), but that is not an exception or a limitation of the Best Evidence Rule. Key

14

refers repeatedly to hearsay itself or to hearsay rules in explaining how the Robinson statements are to be used, but never offers any authority that the hearsay rule or the exceptions to the hearsay rule apply to the Best Evidence Rule. (50 at 37-38; *Id*. at 37 ("The purpose for which a piece of evidence is admitted governs whether it is hearsay.")) Specifically, Key states without any supporting authority that "the best evidence rule tends to go hand-in-hand with the rule against hearsay." (*Id*.) Key also states again without any authority that "[t]he [Best Evidence Rule] does not require admission of document if the testimony is not offered to prove the contents of the document, but instead, some other fact, like state of mind, understanding, or intent." (*Id*.) To the contrary, the Best Evidence Rule does not have such exceptions and applies whenever a party is attempting to describe the contents of a document. *Roundtree v. Bowers*, No. 22-11557, 2022 WL 17986182 *3 (11th Cir. December 29, 2022) ("This rule applies when a witness seeks to testify about the contents of a recording when the witness was not privy to the events described."); *Benjamin v. Thomas,* 766 Fed. Appx. 834, 837 (11th Cir. 2019).

Key does not even try to rebut or distinguish the various Eleventh Circuit decisions Dynamic cited stating that the Best Evidence Rule applies when a party is attempting to describe a document (Doc. 36 at 45), relying exclusively on the argument that if the evidence is offered to show the "effect" on Key it is admissible, which has no support in the law. *See, e.g., Benjamin v. Thomas,* 766 Fed. Appx.

15

834, 837. Key also does not contest that Dynamic was substantially prejudiced by the admission of the evidence as the evidence could have affected the outcome of the trial as it related to the key issue in the case. Instead, Key relies solely on that the testimony about the content of the memos was properly allowed as a matter of evidentiary law. But the Robinson testimony is a classic violation of the Best Evidence Rule; it describes the content of a document to convince the jury on a crucial element of her case.

In this instance, Key's evidence about Robinson is solely a description of the alleged memos and contains nothing else. Key's reliance on *United States v. Howard*, 953 F.2d 610, 613 (11th Cir. 1992), demonstrates Key's misunderstanding of the Best Evidence Rule and its application. In *Howard*, the witness was allowed to testify to the contents of a conversation he overheard; the fact the conversation was also recorded did not prevent the testimony under the Best Evidence Rule as applied by the Eleventh Circuit. The witness was not describing the contents of a document but what the witness personally heard. (*Id*. at 612). The Robinson testimony, in complete contrast, was not describing an event she heard or was any part of, but solely describes the content of the alleged memos.[5]

---

[5] To the extent that Key is arguing on page 38 of the Appellee's Brief that the Best Evidence Rule does not apply because no evidence has been presented that the memos exist, that would seem to be contrary to the Best Evidence Rule's purpose of preventing fraud and nonsensical.

## IV.   THE JURY INSTRUCTIONS FAILED TO INFORM THE JURY ADEQUATELY OF THE LAW.

Dynamic argued in its Principal Brief that the Court's jury instruction on the protected activity requirement for a retaliation claim did not accurately state the law, but left out an important element that resulted in prejudicial harm to Dynamic by removing one of its primary defenses. (Doc. 36 at 49-56). Dynamic's specific issue with the jury instruction was that it stated that Key engaged in protected activity if she had a good faith belief that she was subjected to discrimination.  The jury charge did not state that to engage in protected activity that Key had to complain about race discrimination. The problem is compounded by the first sentence of that instruction that states "[f]or the first element, protected activity, Ms. Key claims that she engaged in protected activity when she complained to Dynamic that she felt discriminated against based on her race." (Doc. 184 at 6-7). Therefore, not only did the District Court refuse to instruct the jury that Key had to complain about unlawful race discrimination, but instructed the jury that Key had complained about race discrimination, which was a significant issue in this case.

Dynamic was not seeking an instruction in which any particular or "magic words" need to be used, but the law is clear that a plaintiff in a retaliation claim must have communicated her belief that she was subjected to unlawful discrimination. And for a Section 1981 claim the plaintiff in a retaliation claim must have communicated that she was subjected to race discrimination. This is not asking for

any magic words but for the jury instructions to apply the black letter law cited by both Key and Dynamic that the retaliation protections "only reach individuals who 'explicitly or implicitly communicate [ ] a belief that the practice constitutes unlawful employment discrimination.'" *Furcron v. Mail Centers Plus, LLC*, 843 F.3d at 1311 (quoting EEOC Compliance Manual).

Dynamic also claims that the trial court improperly refused to give a jury instruction that the decision maker has to be aware of the protected activity in order to establish a causal link between the protected activity and the alleged adverse action. This is established law referenced multiple times by this Court. *See, e.g., Patterson v. Georgia Pacific, LLC,* 38 F.4th 1336, 13511 (11th Cir. 2022); *Duncan v. Alabama*, 734 F. App'x 637, 641 (11th Cir. 2018). Yet the Court refused to give any sort of instruction regarding this requirement that the decisionmaker has to be aware of the protected activity.

Key does not dispute this is a correct statement of the law but instead claims it is unnecessary and is improperly asking the Court to instruct the jury to rule in Dynamic's favor. (doc. 50 at 45-46). Again, Key claims that the District Court's instruction about good-faith belief remedies any issue with the instruction. But that instruction deals only with Key's good-faith belief and not with the knowledge of Dynamic's decision maker. Dynamic is not asking for the Court to require an instruction that would result in a verdict in Dynamic's favor, but only wants a fair

instruction that states the law. Considering the evidence that Dynamic's decision maker considered Key's complaints to be about her hair and not her race it was prejudicial for the District Court to refuse to give an instruction that the decision maker had to be aware of any protected activity.

Finally, Key claims the more general causation instruction the District Court gave is sufficient because the decision maker could not have taken any adverse action against Key because of her protected activity if the decision maker was not aware of the protected activity. If that was the case this Court would not have had to mention multiple times that the causation element requires the decision maker be aware of the protected activity. All Dynamic wanted was for this correct statement of the law to be presented to the jury. Without instructions such as this and the one requested earlier that Key had to have complained about race discrimination, the jury would be left based on the instructions given with a firm conclusion that Key's complaints about her hair discrimination were sufficient to establish her retaliation claim.

The District Court's refusal to instruct the jury on the law in the Eleventh Circuit regarding grooming policies was reversible error and justify providing Dynamic a new trial. Dynamic was impaired in providing an effective defense without the jury being informed of this aspect of the law.  The refusal was particularly egregious in this instance because so much of Key's case based on the

jury instructions given are apparently based on whether Key had a good faith belief she was subjected to race discrimination. For example, the jury instruction given on protected activity focuses solely on whether Key had a good faith belief she was subjected to race discrimination. (Doc. 184 at 6-7). Dynamic objected to that instruction but the objection was overruled; moreover the District Court refused to instruct the jury that a race-neutral grooming policy to prohibit dreadlocks without evidence of racially discriminatory application, is not race discrimination. (Doc. 161 at 18; 184 at 6-10.; Doc. 194, Tr. I-154:17-155:10; Vol. II at 218:25-219:12, 25:1-224:4). So also, Key contends that Dynamic's instruction that the decision-maker has to be aware of the protected activity is not necessary because the Court instructed the jury that Key had to have a good faith reasonable belief that she was subjected to race discrimination. (Doc. 50 at 45). But the District Court did not give any guidance regarding the law on neutral grooming policies.

The instruction requested is a correct statement of the law, dealt with an issue before the jury, and failure to give the instruction prejudiced Dynamic. The statement of the law is directly from this Court's decision in *Catastrophe Management.* Despite Key's contention that the issue from *Catastrophe Management* was not before the Court because Key wants to distinguish her situation from the *Catastrophe Management* case, this Court's holding is certainly relevant to this matter. It was the basis for the retaliation claims to be dismissed against

20

Dynamic's two Co-Defendants. (Doc. 138 at 41-42). And it provides the framework for whether Key had a good faith belief she was subjected to race discrimination. Thus Dynamic was prejudiced because the refusal to provide the requested instruction likely influenced the verdict since the jury was left with no guidance to determine if Key had a good faith belief she suffered race discrimination.

## V.    COUNSEL'S IMPROPER COMMENTS MADE DURING CLOSING ARGUMENT, WHICH WERE MADE POSSIBLE BY MISLEADING JURY INSTRUCTIONS, SUBSTANTIALLY PREJUDICED DYNAMIC.

The statements to which Dynamic has objected certainly impaired the consideration of the jurors. The statements counsel made about the grooming policy and that it was discriminatory and applied only to African Americans fall directly in line with Key's counsel's theory of the case. Those statements were improper because the District Court already had ruled that Key had no claim for race discrimination based on the grooming policy, and therefore, Dynamic was denied its dismissal of that claim before the jury. Moreover, with one of the primary issues at trial being if Key had a good faith belief she was subjected to race discrimination, the challenged statements by Key's counsel – without any evidentiary support and in contradiction of the trial court's Memorandum Opinion on Dynamic summary judgment motion - support that important element. And, furthermore, with no evidence existing that the memos exist saying the Koreans do not want African Americans wearing dreadlocks (doc. 194, Tr. I-118:1-119:5), Key may have needed

the jury to determine, contrary to the law and the District Court's Opinion, that the grooming policy itself was discriminatory.

Key is correct that Dynamic takes great issue at the suggestion by counsel that the grooming policy is the memos Robinson allegedly referenced. No evidence existed to support that suggestion, and it continues Key's attempt to claim that a policy that prohibits dreadlocks is inherently racially discriminatory. But that is contrary to the law in general and as applied previously in this case.

## VI.    KEY DOES NOT IDENTIFY EVIDENCE OF ANY EMOTIONAL DISTRESS RESULTING FROM ANY RETALIATION.

Evidence of emotional distress cannot be presumed and must be based on the evidence before the trial court. *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005).   Dynamic argued in its Principal Brief and provided citations to the record that all of Key's testimony regarding any emotional distress was due to the discrimination she felt due to her hair and being upset she could not wear her hair in dreadlocks and not because she was not reassigned by Dynamic following her alleged complaints of unlawful discrimination. (Doc. 36 at 46-48). Key does not rebut this evidence or even attempt to show it is inaccurate.

Key's only argument in favor of the compensatory damages awarded by the jury contains no citation to the record to support any facts or evidence in support of Key's claim for compensatory damages resulting from any alleged retaliation. (Doc. 50 at 51-52).  Key refers to her testimony regarding her "frustration, hurt, and loss

of self-esteem" (*id*. at 51), but offers no citation to the record to support that alleged testimony. Key's Statement of Facts similarly provides no citation to the record to support that testimony and does not address Key's alleged emotional distress. (*Id.* at 14-24). Key further references certain conduct that occurred including Key reaching out to Dynamic but no one contacting her. (*Id*. at 52). Again, Key does not offer any citation to the record, but more importantly does not connect this conduct with any claims of emotional distress. (*Id*.)

In contrast Dynamic has cited to the specific testimony that any distress Key suffered was due to the alleged discrimination over her hair (a claim that was dismissed prior to trial). Key claims "Dynamic argues generally that the award is excessive without providing any basis to so conclude" and that "Dynamic offers no evidence or argument that the jury deviated from the Court's [sic] instructions in reaching its award." (*Id*. at 52). That argument blatantly ignores Dynamic's well-supported argument with citations to the applicable part of the record that any of Key's injuries were – according to her testimony – due to the alleged discrimination over her not being allowed to wear dreadlocks. (Doc. 36 at 46-48). And the jury's determination was contrary to the instructions to the jury which were to award any emotional distress damages "as a result of Dynamic not placing her in another employment assignment, no more and no less." (Doc. 196 Tr. III-99). As there is no testimony before this Court of any damages resulting from Key not being reassigned,

but is all resulting from the alleged discrimination due to her hair, the verdict is excessive, and no damages should be awarded.

Key's final argument is that Dynamic failed to offer any verdicts in comparable cases to show the award was not consistent with the evidence and offers evidence of verdicts in two other cases.  That argument would not apply here where the evidence is that **all** of Key's alleged emotional distress damages were the result of Key's dismissed discrimination claim.  Also, this Court has recognized that "'[c]omparison of verdicts rendered in other cases is not a satisfactory method for determining excessiveness *vel non* in a particular case and . . .  each case must be determined on its own facts." *Sykes v. McDowell*, 786 F.2d 1098, 1105 (11th Cir. 1986) (citations omitted).

## VII.  KEY HAS OFFERED NO EVIDENCE TO COUNTER DYNAMIC'S ARGUMENTS THAT PUNITIVE DAMAGES SHOULD BE REVERSED OR REMITTED.

In response to Dynamic's arguments that punitive damages should not be awarded (doc. 36 at 48-49), Key has not offered one citation to the record that supports its position that substantial evidence existed that Dynamic acted with malice or reckless indifference. (Doc. 50 at 43-44). Furthermore, Key misstates certain evidence, claiming twice incorrectly that Dynamic's Human Resources Manager responsible for ensuring compliance did not undergo Dynamic's anti-discrimination training. (*Id*. at 43).  Key offers no citation for that assertion; the

actual testimony was that the person at issue was an HR Coordinator who handled "garnishments, unemployment claims, the workers' comp, employment verifications . . . and also assisted the managers in the branches with investigations." (Doc. 195 Tr. II-103:9-17).

Key also has not rebutted Dynamic's position that the punitive damages were excessive particularly when the reprehensibility factors are considered. (Doc. 36 at 49-51). The only factor Key identifies is that she was financially vulnerable, but she offers no citation to the record to support that or her claim that she "suffered emotional distress and applied for multiple jobs while her family depended on her." (Doc. 50 at 44-45).[6] The appearance of only a single factor does not justify a punitive damage award. *Campbell*, 538 U.S. at 419, 123 S.Ct. 1513 ("The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect."). Moreover, in addition to the fact that Key does not offer any evidence to support her alleged financial vulnerability, the facts show she was not financially vulnerable. Key's husband was employed by UPS when she stopped working for Dynamic. (Doc. 195 Tr. II at 17:13-20). Key resigned her most recent full-time job in February 2016 because she found the commute excessive. (Doc. 194, Tr. 1 at

---

[6] Key does not appear to claim that there was intentional malice instead only arguing that "Dynamic's actions showed a reckless disregard for her rights." (*Id*. at 45).

47:18-22, 129:7-11). Key then worked a contract position from July 2016 to December 2016 (*Id*. at 49:2-7) before she accepted an offer from Dynamic making $13.00/hour, with her first day in July 2017. With this evidence it does not appear Key meets any of the factors to establish punitive damages. *Compare Williams v. First Advantage LNS Screening Solutions*, 947 F.3d 735, (11th Cir. 2020) (plaintiff was allegedly financially vulnerable as he had little to no income when he applied, worked two part-time jobs to make ends meet, and lived at home with his mother).

VIII.  CONCLUSION.

For the reasons stated above, Dynamic is entitled to have judgment entered in its favor and a new trial ordered, or the damages remitted.

CERTIFICATE OF COMPLIANCE

This document contains 6498 words and thus complies with the word limit of

Fed. R. App. P. 32(a)(7)(B), excluding the parts exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: March 19, 2025

Respectfully submitted,

*/s/Wesley C. Redmond*
OF COUNSEL

CERTIFICATE OF SERVICE

I certify that, on March 19, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Counsel for all parties registered as CM/ECF users will be served with the foregoing document by the Court's CM/ECF system.

/s/Wesley C. Redmond
OF COUNSEL

28