**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**DOCKET NO.: 24-11069**

---

**DAVITA KEY,**

PLAINTIFF – APPELLEE,

v.

**DYNAMIC SECURITY, INC.,**

DEFENDANT – APPELLANT.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO. 2:19-CV-00767-ECM-SMD

---

# APPELLEE'S PETITION FOR REHEARING AND REHEARING EN BANC

---

COUNSEL FOR APPELLEE
Heather Newsom Leonard
HEATHER LEONARD, P.C.
1023 Edenton St.
Birmingham, AL 35242
(205) 977-5421
Heather@HeatherLeonardPC.com

Leslie A. Palmer
PALMER LAW, LLC
2 20th Street North, Suite 900
Birmingham, AL 35203
(205) 285-3050
Leslie@PalmerLegalServices.com

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Cir. R. 26.1-1, the undersigned counsel of record for the Appellee hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

1. Bullock, Susan W., Counsel for Dynamic, Appellant
2. Doyle, Hon. Stephen M., US Magistrate Judge
3. Dynamic Security, Inc., Defendant, Appellant
4. FordHarrison, LLP, Counsel for Dynamic, Appellant
5. Heather Leonard P.C., Counsel for Plaintiff Appellee
6. Key, Davita M., Plaintiff/Appellee
7. Lehr Middlebrooks Vreeland & Thompson, P.C., Counsel for HMMA, Appellee Companion Case
8. Leonard, Heather Newsom, Counsel for Plaintiff, Appellee
9. Marks, Hon. Emily C., US District Court Judge
10. Palmer Law, LLC, Counsel for Plaintiff Appellee
11. Palmer, Leslie A., Counsel for Plaintiff Appellee
12. Redmond, Wesley C., Counsel for Dynamic, Appellant

Respectfully submitted this 26th day of August, 2026.

/s/ Leslie A. Palmer
Leslie A. Palmer
*Attorney for Appellee*

OF COUNSEL:
PALMER LAW, LLC
2 20th Street North, Suite 900
Birmingham, AL 35203
(205) 285-3050
leslie@palmerlegalservices.com

**STATEMENT OF COUNSEL REGARDING EN BANC CONSIDERATION**

1. I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:
    a. Whether a district court abuses its discretion by rejecting an erroneous, laborious, and confusing proposed jury instruction and charging the jury with the pattern instruction that correctly stated the law under the facts of the case.
    b. Whether the definition of protected activity under the first element of a § 1981 (or Title VII) retaliation claim requires proof that the employer subjectively understood the complaint to concern a protected characteristic, or whether the protected activity turns on whether the plaintiff held an objectively reasonable, good-faith belief that she was opposing unlawful discrimination, with the employer's awareness governed by the separate causation element.
2. I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents

of this circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court:

a. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir. 1999) (discussing the necessary proof for protected activity under the opposition clause of Title VII noting subjective and objective reasonable requirements and encompassing the employer's knowledge and understanding as a causal element.); *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) (discussing explicit or implicit communication without determining whether it is a separate element of protected activity or incorporated into causation).

b. *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012) (denial of proposed jury instruction subject to abuse of discretion three-part test); *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004) (de novo review as to whether given jury instructions, as a whole, misstate or mislead the jury to prejudice the objecting party).

*/s/ Leslie A. Palmer*
*Counsel for Appellee Davita M. Key*

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....................ii

STATEMENT OF COUNSEL REGARDING EN BANC CONSIDERATION ....iv

TABLE OF CONTENTS ....................vi

TABLE OF AUTHORITIES....................vi

STATEMENT OF THE ISSUES MERITING REHEARING ....................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ....................1

STATEMENT OF FACTS NECESSARY TO ARGUMENT OF THE ISSUES ....2

ARGUMENT ....................6

I. Making the employer's understanding part of the definition of protected activity ignores the Supreme Court's definition of opposition and revokes protected status based on the employer's knowledge rather than the facts, context, and the employee's objectively reasonable belief. ....................6

a. This Circuit's precedent does not require proof of the employer's understanding as a threshold issue where the context would let an objectively reasonable employee understand her complaint as opposition to unlawful conduct. ....................6

b. Requiring a charge on the employer's knowledge at the protected activity stage lets employers backdoor a "magic words" requirement....................9

II. Where the district court charged the jury with substantively correct instructions, its denial of Dynamic's proposed charge did not satisfy the three-part abuse-of-discretion test. ....................11

a. The panel's holding exceeds the scope of Dynamic's appeal....................12

b. The given instruction did not misstate the law or mislead the jury to Dynamic's prejudice....................12

c. Declining legally inaccurate instructions is not abuse of discretion ....................15

CONCLUSION ....................16

CERTIFICATE OF COMPLIANCE ....................17

CERTIFICATE OF SERVICE....................17


# TABLE OF AUTHORITIES

**Cases**

*Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021)...............7
*Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003)................................................13
*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir. 1999)..........................v, 7
*Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228
(11th Cir. 2004) ..........................................................................................v, 11, 13
*Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068
(11th Cir. 1995) .................................................................................................6
*Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271 (2009).......7
*Demers v. Adams Homes of NW. Fla., Inc.*, 321 F. App'x 847
(11th Cir. 2009) ...........................................................................................9, 10
*EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (11th Cir. 2016)......................12
*Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016)...............v, 7, 8
*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000) ................................10
*Jefferson v. Sewon Am., Inc.*, 891 F.3d 911 (11th Cir. 2018)...................................7
*Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406 (9th Cir. 1987) ..................................9
*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012) ................................12
*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956
(11th Cir. 1997) .................................................................................................7
*Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211
(11th Cir. 2012) ..........................................................................................v, 11, 15
*Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720 (7th Cir. 2003)..............................9, 10
*Strother v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018).........................................10
*United States v. Smith*, 122 F.3d 1355 (11th Cir. 1997)...........................................7
*United States v. Verbitskaya*, 406 F.3d 1324 (11th Cir. 2005)...............................14

**Rules**

Eleventh Cir. R. 26.1-1...........................................................................................ii
Eleventh Cir. R. 40-4..............................................................................................17
Fed. R. App. P. 32 ..................................................................................................17
Fed. R. App. P. 40 ..................................................................................................17

## STATEMENT OF THE ISSUES MERITING REHEARING

I. Whether *Furcron*'s reference to explicit or implicit communication strips an otherwise-protected complaint of its protected status, and requires a separate jury instruction, merely because the employer asserts it did not subjectively understand the complaint to concern a protected characteristic.

II. Whether the panel opinion contradicts this Circuit's precedent requiring a district court's denial of a proposed jury instruction to be reviewed for abuse of discretion.

III. Whether any instructional error was harmless where the parties do not dispute that the employer received notice of an EEOC charge expressly alleging race discrimination within days of Key's initial complaint.

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE[1]

Davita Key sued Dynamic Security, Inc. for race discrimination, pregnancy discrimination, and retaliation.[2] After summary judgment dismissed most of her claims, she tried § 1981 retaliation to a jury.[3]

Dynamic proposed non-pattern instructions that misstated the law. Across three charge conferences, it asked the court to add language requiring the jury to

[1] Record Citations are to the Circuit Court Docket unless otherwise stated.
[2] Key also sued multiple Hyundai entities that are not party to this Petition.
[3] Addendum A, Panel Opinion ("PO") at 7-8

find that Key expressly or implicitly communicated to the employer her belief that her activity was protected.[4] Key argued the causation charge already accounted for the employer's knowledge and understanding.[5] The court ordered Dynamic to produce binding authority holding the pattern charge "legally insufficient;" when Dynamic could not, the court held the pattern instruction "an accurate statement of the law" that included the relevant facts and contentions and allowed Dynamic to argue its position fully.[6]

The jury returned a verdict for Key and awarded $811,264.[7] Dynamic appealed.[8] The panel vacated the verdict, holding the district court abused its discretion by charging the pattern instruction over Dynamic's objection.[9] (PO at 3, 14-16.)

## STATEMENT OF FACTS NECESSARY TO ARGUMENT OF THE ISSUES

The jury heard that a Dynamic supervisor, Robinson, told Key she could not wear her hair in dreadlocks because "the Koreans" who run the Hyundai plant "don't want African Americans wearing their hair like this."[10] Key told another supervisor she wanted to make an official complaint of discrimination, then

[4] Doc. 161 at 17-21; Doc. 194 at 155-161; Doc. 195 at 223-230; Doc. 196 at 3-12
[5] Doc. 196 at 8; Doc. 196 at 44-45
[6] Doc. 195 at 229; Doc. 196 at 11-12
[7] Doc. 185
[8] Doc. 217. Key cross-appealed the dismissal of her other claims but does not re-raise those issues in this Petition. Doc. 221
[9] The panel's remaining holdings are not at issue on this Petition.
[10] Doc. 194 at 57

submitted a written complaint that she "was being discriminated against because of [her] hair in dreadlocks, and also because [she] was pregnant."[11]

Cureton asked whether Key was going to sue Dynamic; after she recounted what had happened, he replied he would not know about her feeling discriminated against because he was "just a big fat white guy."[12] Dynamic removed Key from her Hyundai assignment.[13] Cureton e-mailed Dynamic's HR that Key wanted to file an official complaint of discrimination and that reassigning her was inadvisable if she pursued it.[14]

Within two days, Key filed an EEOC race discrimination charge.[15] Ten days later, Dynamic received notice of the charge;[16] less than two hours later, Spires treated Key as separated, testifying Dynamic stopped seeking assignments for her because "we had received the EEOC charge."[17] Throughout litigation, Dynamic maintained it understood only a grooming-policy complaint, not one of race.

Dynamic's first written request was a multipage, legally incorrect, and confusing protected activity instruction.[18] It would have told the jury that dreadlocks are not a protected, immutable characteristic and can never support a

[11] Doc. 194 at 63-66
[12] Doc. 194 at 68-69
[13] Doc. 194 at 69
[14] Appeal Doc. 42-14 p.178
[15] Doc. 194 at 72-73
[16] Doc. 195 at 137-138.
[17] Doc. 195 at 150
[18] Doc. 161 at 14-27

race discrimination complaint, and required Key to prove "wearing dreadlocks is protected by law."[19] It asked that Key's complaint be protected only "if she articulated that she was opposing *illegal* race discrimination," and that "[n]o matter how the complaint is made, it must communicate a belief that an employer is engaged in unlawful discrimination based on race."[20] It further charged that if the policy was not objectively unlawful, "your analysis must end here, and you must rule in favor of Dynamic," and that the decision-maker must have had "actual knowledge that the plaintiff had specifically complained about race discrimination," essentially a "magic words" requirement."[21] Dynamic later orally requested the proposed instruction be amended to add "some language that states that protected activity requires that an individual explicitly or implicitly communicate a belief that the practice constitutes unlawful employment discrimination."[22]

Key proposed the pattern § 1981 retaliation charge as an accurate statement of the law. The district court questioned where the employer's knowledge belongs:

> When we're looking at the elements of the cause of action, in order for the protected activity to even be protected, is that where we look at what the employer has heard? In other words, is it protected where she's made the complaint, she believes she's making a complaint of race discrimination, and the employer is saying we heard the complaint, but

[19] Id. at 18-20
[20] Id. at 17
[21] Id. at 19-20, 25
[22] Doc. 196 at 4

> we didn't understand it to be about race? Does that mean it was not a protected activity?[23]

The parties disagreed: Key placed the employer's understanding in causation; Dynamic placed knowledge of protected status in the protected activity determination.[24] Over three conferences the court rejected Dynamic's proposals, finding itself "hard pressed to say that [the pattern charge was] legally insufficient" and noting Dynamic could produce no binding authority that it was "a legally insufficient statement."[25] Pressing *Furcron*, Dynamic asked the court to add that "protected activity requires an individual to explicitly or implicitly communicate a belief that the practice constitutes unlawful employment discrimination." The court declined: "I'm not going to alter the pattern jury instruction … because I think it's adequately covered" and noted Dynamic's objection.[26]

Calling it an "interesting issue of under which prong the knowledge of the employer is considered," the court reasoned it need not resolve that question because "under the facts of this case" there was "sufficient evidence for the jury to determine" that Key was "in fact, making a race discrimination claim" – a fact question the jury would resolve in deciding protected activity and causation.[27] The content of the full charge is in the record appendix and quoted more below.[28]

---

[23] Doc. 196 at 8
[24] Id. at 8-11
[25] Doc. 195 at 229
[26] Doc. 196 at 4-12
[27] Doc. 196 at 44-45
[28] Doc. 196 at 90-107

The panel found an abuse of discretion because the instruction "omitted the second requirement" of *Furcron*. (PO 15-16.) It did not address whether the pattern instruction was legally insufficient, or whether the denial of Dynamic's proposed instruction met the three-part abuse-of-discretion test. It reversed and remanded for a new trial without reaching Dynamic's remaining arguments. *Id.* 16.

## ARGUMENT

### I. Making the employer's understanding part of the definition of protected activity ignores the Supreme Court's definition of opposition and revokes protected status based on the employer's knowledge rather than the facts, context, and the employee's objectively reasonable belief.

The district court asked whether a complaint must be understood by the employer as a race complaint to satisfy the first element, or whether that knowledge goes to causation. Simply put, was conduct opposition. As the court correctly determined, Eleventh Circuit precedent requires no separate charge on opposition or the employer's understanding; the employer's knowledge is housed within causation.

#### a. This Circuit's precedent does not require proof of the employer's understanding as a threshold issue where the context would let an objectively reasonable employee understand her complaint as opposition to unlawful conduct.

To establish retaliation, a plaintiff need satisfy only three elements: protected activity, adverse action, and a causal connection. *See Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995); *Little v.*

*United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997); *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). A plaintiff need not show the conduct complained of was actually unlawful, so long as it is "close enough to support an objectively reasonable belief." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d at 1311 (citing *Little*, 103 F.3d at 960, and *Clover v. Total Sys. Servs., Inc.*, 176 F.3d at 1351).

The Supreme Court defined opposition in *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271 (2009), holding an employee may oppose unlawful conduct merely by answering questions rather than instigating a complaint. *Id.* at 275-76. Applying opposition's ordinary meaning, "to resist or antagonize," the Court explained that communicating to an employer that it has engaged in discrimination will "virtually always" constitute opposition, with only "eccentric" exceptions like calling a "supervisor's racist jokes . . . hilarious." *Id.* at 276.

Nothing in *Furcron* expands that definition or adds to the elements of retaliation. This Circuit is bound by earlier panel holdings absent en banc review. *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997); *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1201 (11th Cir. 2021). The *Furcron* panel, like the panel here, was bound by prior precedent fixing the elements of retaliation.

*Furcron* was not asked whether explicit or implicit communication is an element of protected activity; it addressed the sufficiency of the evidence at summary judgment, pointing to the employee's objectively reasonable belief. *Furcron*, 843 F.3d at 1311. The panel held the severity and content of Furcron's complaints were "close enough to support an objectively reasonable belief that the conduct opposed constituted sexual harassment," and that she had not "merely relied on [the employer] to infer that discrimination had occurred." *Id.* It required no specific recitation of "explicit or implicit communication;" it stated only that "the statute's protections only reach individuals who explicitly or implicitly communicate a belief that the practice constitutes unlawful employment discrimination" before finding substantial evidence of opposition. *Id.* The objective inquiry asks how the complaint would be understood in context. *Furcron* answered by viewing the evidence "cumulatively, and in its social context." *Id.* at 1312. The question was not whether the employee explicitly complained of race discrimination, but whether the complaint communicated could reasonably be understood as close enough to race discrimination to protect it.

The first element of a retaliation claim presupposes communication; Key could not prove protected activity without evidence that she expressed her complaint, she did so verbally and in writing to multiple Dynamic employees, followed promptly by an EEOC charge. There was no dispute that she complained;

Dynamic disputed only the complaint's content, which the objective reasonableness requirement squarely addresses. Reading *Furcron* to require a separate instruction quoting language a panel merely glossed would confuse juries and destabilize settled charging practice; what must be proved is not the same as what must be recited.

**b. Requiring a charge on the employer's knowledge at the protected activity stage lets employers backdoor a "magic words" requirement.**

Dynamic sought jury instructions requiring an employee to use magic words to engage in protected activity. A complaint need not contain magic words; it need only bring a protected characteristic into issue. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (no protected activity where employee merely said she felt "picked on"); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) (no protected activity where opposition was to preserve a radio personality's value).

This Circuit has addressed sufficiency of evidence of opposition. *See Demers v. Adams Homes of NW. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009). There, after a supervisor attributed the denial of maternity leave to a superior's remark that "[t]he problem with pregnant women is that you don't know if they'll come back to work," the plaintiff asked to speak with the superior. *Id.* Given the context of the whole conversation, the panel held a jury could infer the

request was "an announcement of her opposition," a holding that turned on her objectively reasonable belief that she opposed unlawful conduct. *Id.*

So too here, the jury heard Robinson tell Key she could not wear dreadlocks because "the Koreans" who run Hyundai "don't want African Americans wearing their hair like this." After hearing the policy was about race, Key asked to file an official complaint of discrimination. As in *Demers*, the jury would weigh the full context to decide whether Key's request, her written complaint, and what followed constituted opposition to conduct she reasonably believed unlawful.

Where employer knowledge is disputed, it goes to causation. "An employee can honestly believe she is the object of discrimination, . . [but] an employer cannot retaliate when it is unaware of any complaints." *Sitar*, 344 F.3d at 727. Causation requires that "the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotation marks omitted); *accord Strother v. City of Laurel*, 895 F.3d 317, 335-36 (4th Cir. 2018) (employer "understood or should have understood the employee to be engaged in protected activity").

The panel's rule gives every defendant not provided magic words an immediate defense. Treating communication of the complaint as a separate threshold element conflates two analytically distinct elements, protected activity

and the employer's knowledge, shifting knowledge out of causation and into the question of opposition. The full Court should resolve whether *Furcron*'s "communicate" language is simply opposition measured by objective reasonableness in context, or a threshold requirement that lets employers dodge liability by playing dumb. As shown below, the pattern instruction correctly stated the law by analyzing opposition through Key's objectively reasonable belief and the employer's knowledge through causation, and, so instructed, the jury found Dynamic retaliated against Key *because* of her opposition to a policy she reasonably believed racially discriminatory. There is no requirement for a separate charge defining Key's conduct as opposition.

## II. Where the district court charged the jury with substantively correct instructions, its denial of Dynamic's proposed charge did not satisfy the three-part abuse-of-discretion test.

The court charged this Circuit's pattern retaliation instruction. The panel recognized that given instructions are reviewed "to determine whether they misstate the law or mislead the jury to prejudice the objecting party," and rejected charges "only for an abuse of discretion." (PO 8-9) (citing *Conroy*, 375 F.3d at 1233; *Pensacola*, 684 F.3d at 1224. The panel held the given charge an abuse of discretion (PO at 14-16) without analyzing its sufficiency under that standard or addressing the issue Dynamic actually appealed; whether the court erred in refusing Dynamic's proposed charge.

**a. The panel's holding exceeds the scope of Dynamic's appeal.**

Dynamic did not argue the given instruction was legally insufficient; it challenged the denial of its proposed instruction. Its civil appeal statement and issues framed the question as whether the court erred by refusing to charge that a prima facie case "requires proof that the Plaintiff complained of race discrimination and that the decision maker knew of" it; that under *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016), a "neutral grooming policy prohibiting dreadlocks does not constitute unlawful race discrimination;" and that causation required proof "the decision-maker knew of Key's complaint of hair discrimination and that she subjectively believed it to be a complaint of race discrimination."

Dynamic's opening brief cited neither *Conroy* nor any authority on the legal sufficiency of a given instruction or its standard of review. "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012). An issue not plainly raised on appeal, even if preserved at trial, is abandoned. *Id.* Because the panel vacated the verdict without applying the proper standard to the given charge, and beyond the scope of the appeal, rehearing is warranted.

**b. The given instruction did not misstate the law or mislead the jury to Dynamic's prejudice.**

Even on the broadest reading of the appeal, the instructions as a whole neither misstated the law nor misled the jury. If the charge "accurately reflect[s] the law, the district court has wide discretion as to the instructions' style and wording," *Conroy*, 375 F.3d at 1233, and is reviewed to determine whether, "considered as a whole, [it] sufficiently instructed the jury so that the jurors were not misled," *Bogle v. McClure*, 332 F.3d 1347, 1357 (11th Cir. 2003). Read in full, not in the isolated clips Dynamic cites, the instructions included the following relevant statement:

- Key claims Dynamic retaliated against her because she took steps to enforce her lawful rights.
- An employee may make a discrimination complaint as a means to enforce what she believed in good faith to be her lawful rights.
- Even if a complaint of discrimination … is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be her lawful rights.
- Key must prove she engaged in protected activity
- Key claims Dynamic did not reassign her because she complained of race discrimination
- Dynamic denies Key's claim and asserts she did not engage in protected activity because she did not complain about race discrimination
- Key must prove each of the following . . . that she engaged in protected activity . . . that Dynamic took the adverse action because of her protected activity.

- Ms. Key claims that she engaged in protected activity when she complained to Dynamic that she felt discriminated against based on her race.
- If you find that Ms.Key engaged in a protected activity and that Dynamic took an adverse employment action against her, you must decide whether Dynamic took that action because of Ms.Key's protected activity. … [Put another way, you must decide whether Ms. Key's protected activity was the main reason for Dynamic's decision.
- To determine that Dynamic took an adverse employment action because of Ms. Key's protected activity, you must decide that Dynamic would not have taken the action had Ms. Key not engaged in the protected activity, but everything else had stayed the same.
- Dynamic claims that it did not refuse to place Ms. Key at another employment assignment because of her complaint to Cureton, and that it, in fact, did offer her new assignments.
- Key has the burden to prove that Dynamic never offered her further employment assignments, and that its decision to do this was because of Ms. Key's protected activity. . .
- To decide whether Dynamic failed to offer Ms. Key further employment assignment and that this was because of Ms. Key's protected activity, you may consider the circumstances of Dynamic's decision. For example, you may consider whether you believe the reason that Dynamic gave for the decision. If you do not believe the reason that it gave for the decision, you may consider whether the reason was so unbelievable that it was a cover-up to hide the true retaliatory reason for the decision.

Instructions will not be overturned unless the reviewing court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided." *United States v. Verbitskaya*, 406 F.3d 1324, 1330-31 (11th Cir. 2005). Considered in their entirety, and not in the Dynamic isolation, the instructions accurately stated the law and could not have misled the jury.

**c. Declining legally inaccurate instructions is not abuse of discretion**

The denial of Dynamic's proposed instruction is an abuse of discretion only if the proposal (1) correctly stated the law, (2) addressed a question properly before the jury, and (3) its omission prejudiced Dynamic. *Pensacola*, 684 F.3d at 1224. Dynamic satisfies none, and the panel did not hold otherwise.

Dynamic's proposal improperly tied Key's protected activity to the legality of the dreadlocks policy, claiming that dreadlocks can never be protected, that Key complained only about dreadlocks, and that Dynamic did not equate that to race. *See supra* § I. Each statement misstates the law. Under *Pensacola*, if the requested instruction did not correctly state the law, refusing it is not an abuse of discretion and the inquiry ends; requiring the court to extract the correct portions of an incorrect request would cast it as an advocate and defeat the purpose of pattern instructions.

Additionally, whether Dynamic actually discriminated against Key was not properly before the jury; her complaint mattered only insofar as it was objectively reasonably close enough to discrimination to be protected, the question the jury decided under the charge given.

Finally, Dynamic cannot show prejudice. Even assuming the charge should have said more, reversal requires "prejudicial harm" and a "substantial and ineradicable doubt as to whether the jury was properly guided." *Brink v. Direct*

*Gen. Ins. Co.*, 38 F.4th, 917, 922-24 (11th Cir. 2022). None exists. It is undisputed that Key complained she was "discriminated against" and, within days, filed an EEOC charge expressly alleging race discrimination in the context of Robinson's statement about the Koreans and African American hair. As the district court observed, Dynamic was "really just splitting hairs too finely" over whether Key communicated a belief that the practice was racially discriminatory. No properly instructed jury could have found the communication requirement unmet, so any omission could not have affected the verdict or warranted a new trial. On all three factors, the panel's opinion contradicts prior precedent.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc, as to the jury instructions, withdraw Part III.A.3 of the opinion, and affirm the district court's judgment on the jury's verdict. In the alternative, the Court should grant rehearing to reconsider whether reversal was inconsistent with *Pensacola* and *Conroy*.

**CERTIFICATE OF COMPLIANCE**

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40 and Eleventh Cir. R. 40-4 because it contains 3,663 words, excluding the parts exempted by Eleventh Cir. R. 40-3 (a), (b), (c), and (i).

2. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced typeface using 14-point Times New Roman.

Dated: August 26, 2026

*/s/ Leslie A. Palmer*
OF COUNSEL

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record and will comply with the Court's paper copy requirements.

Counsel for Dynamic Security, Inc.
Wesley C. Redmond
Susan W. Bullock
FordHarrison, LLP
wredmond@fordharrison.com
sbullock@fordharrison.com

*/s/ Leslie A. Palmer*
OF COUNSEL

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**DOCKET NO.: 24-11069**

---

**DAVITA KEY,**

PLAINTIFF – APPELLEE,

v.

**DYNAMIC SECURITY, INC.,**

DEFENDANT – APPELLANT.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO. 2:19-CV-00767-ECM-SMD

---

**ADDENDUM A TO**
**APPELLEE'S PETITION FOR REHEARING**
**AND REHEARING EN BANC**

**PANEL OPINION**

---

COUNSEL FOR APPELLEE
Heather Newsom Leonard
HEATHER LEONARD, P.C.
1023 Edenton St.
Birmingham, AL 35242
(205) 977-5421
Heather@HeatherLeonardPC.com

Leslie A. Palmer
PALMER LAW, LLC
2 20th Street North, Suite 900
Birmingham, AL 35203
(205) 285-3050
Leslie@PalmerLegalServices.com

**FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 24-11069

---

DAVITA M. KEY,

*Plaintiff-Appellee,*

*versus*

HYUNDAI ENGINEERING AMERICA, INC.,

*Defendant,*

DYNAMIC SECURITY, INC.,

*Defendant-Appellant.*

---

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00767-ECM-SMD

---

No. 24-11126

---

DAVITA M. KEY,

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/05/2026 Page: 2 of 16



*Plaintiff-Appellant,*

*versus*

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,
HYUNDAI ENGINEERING AMERICA, INC.,
DYNAMIC SECURITY, INC.,

*Defendants-Appellees.*

---

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00767-ECM-SMD

---

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

KIDD, Circuit Judge:

Davita Key is a Black woman who wears her hair in a natural style colloquially known as "dreadlocks" ("locs"). Key claims that the defendants, who were her employers, racially discriminated against her because she wore her hair in locs. She also claims that they retaliated against her for complaining about that discrimination. After the district court dismissed some of Key's claims, she went to trial solely against Dynamic Security on her retaliation claim. A jury awarded her a total of $811,264 in damages.

Dynamic Security appeals the judgment against it, and Key appeals the district court's orders dismissing some of her claims against Dynamic Security and all of her claims against the other defendants.

We affirm the district court's judgment as to Hyundai Motor Manufacturing Alabama and Hyundai Engineering America. As to Dynamic Security, we affirm the district court's judgment against Key's § 1981 race discrimination claim. But we find that the district court should not have presumed at the summary judgment stage that Key received notice of her right to sue. As a result, the district court should not have ruled that her Title VII claims were untimely. We also find that the district court abused its discretion when it did not instruct the jury to determine whether Dynamic Security discriminated against Key on the basis of her race. So we reverse the district court on these issues, vacate the judgment against Dynamic Security, and remand the case against Dynamic Security for a new trial.

## I. BACKGROUND

A. *Underlying Facts*

Key submitted a job application to work for Dynamic Security, Inc. ("Dynamic"), in the mailroom at the Hyundai Motor Manufacturing Alabama ("HMMA") plant in Montgomery, Alabama. Among other things, Dynamic provides security services to HMMA. Dynamic has a grooming policy that applies to all uniformed security officers assigned to HMMA, including those

assigned to the mailroom. Dynamic's grooming policy prohibits locs and similar hairstyles.

On July 19, 2017, Key interviewed for the mailroom job. Gloria Robinson, an employee of Dynamic, and Cassandra Williams, an employee of Hyundai Engineering America ("HEA"), attended Key's interview. During the interview, Robinson told Key that her locs might be a problem. After some discussion, Key showed Robinson and Williams a picture of her locs styled in a manner called an "updo," and both women said "okay." Dynamic hired Key for the mailroom position.

During Key's training, Dynamic provided her with the Security Officer's Handbook ("Handbook"). The Handbook included a section titled "Waiver of Trial By Jury Policy." Key admits that she skimmed parts of the Handbook and signed an "Acknowledgement and Receipt of Employee Handbook" form, confirming she had received the Handbook and was bound by its policies. But at trial, Key testified that she could not recall whether she read the jury trial waiver before or after starting her job in the mailroom.

Key appeared for her first day of work with her hair styled in locs. She was sent home before the end of the workday because of her hair. Key testified that Robinson told her that "the Koreans" at Hyundai "send these memos, and they don't want African Americans wearing their hair like this because . . . you have people like Todd Strange, who . . . was the mayor at that time . . . he doesn't, like, basically want to see me and my hair like this." Key thought the statement was racist.

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/05/2026 Page: 5 of 16



The next day, Key's hair remained in locs, but she wore a hat to work. When Key's trainer asked why she left early the prior day, Key said that she was sent home because management had an issue with her hair. Later that day, Key had a meeting with Robinson and another manager, Maurice Chambliss. During the meeting, Robinson stated: "So I heard that you feel like you been discriminated against." Key responded that she was wearing a hat, as instructed. Robinson replied, "This is going to be a problem. You're going to be a problem." When Key again said she was wearing a hat covering her hair, as instructed, Robinson said, "This is not about your hat, like, this is not about your hat. This is not about your hair." After the meeting, Key went back to the mailroom and asked whether her trainer had told management that "[she] felt discriminated against." The trainer responded, "Yes, because that's what you said."

Key then told Chambliss she would like to speak with someone in human resources so that she could make an official complaint of discrimination. Chambliss told Key she would have to speak to Robinson. When Key asked if there was anyone else with whom she could speak, Chambliss called Robinson and asked what to do. Key made an official, written complaint of discrimination and gave the complaint to Chambliss. Key complained that she "was being discriminated against because [she had her] hair in dreadlocks, and also because [she] was pregnant." Key testified that she viewed her complaint as alleging race discrimination.

USCA11 Case: 24-11069 Document: 78-1 Date Filed: 08/26/2026 Page: 31 of 41



Key then asked Chambliss if she could leave to speak with Ray Cureton at Dynamic's office. Key thought Cureton was in Dynamic's human resources department, but, in fact, he was Dynamic's district manager and acting operations manager with authority over security at the Montgomery plant. Chambliss confirmed that if Key left to speak with Cureton, she would be able to return to work, so Key left to meet with Cureton. When Key spoke with Cureton, he asked Key if she was going to sue them. After Key disclosed the events of her first day, Cureton told Key that she could not return to work.

B. *EEOC Charges*

Key completed a U.S. Equal Employment Opportunity Commission ("EEOC") intake questionnaire on August 2, 2017, the day after her last day of work. She named "Cassandra Williams, AMCO" and Gloria Robinson as the persons responsible for the alleged discrimination. "AMCO" was the previous name for HEA. On August 3, 2017, the EEOC issued a charge of discrimination against Dynamic Security, which Key signed. The EEOC issued a second charge against HMMA, which Key also signed. Once Dynamic responded, the EEOC mailed Key a copy of Dynamic's statement. The EEOC also mailed Key a conciliation letter on her HMMA charge.

On March 1, 2019, the EEOC issued Key a right-to-sue letter for her charge against Dynamic. But Key claims she never received this right-to-sue letter. On July 12, 2019, the EEOC also issued Key a right-to-sue letter against HMMA, which she received.

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/05/2026 Page: 7 of 16



C. *The District Court Litigation*

On October 10, 2019, Key filed a complaint against Dynamic, HEA, and HMMA, alleging race discrimination, pregnancy discrimination, and retaliation under Title VII. Key subsequently filed an amended complaint against the same parties alleging five claims against all three defendants: (1) pregnancy discrimination under Title VII, (2) race discrimination under Title VII, (3) race discrimination under 42 U.S.C. § 1981, (4) retaliation under Title VII, and (5) retaliation under 42 U.S.C. § 1981.

All three defendants moved to dismiss the amended complaint. The district court granted in part and denied in part the motions, dismissing the disparate-impact race discrimination claims under Title VII and § 1981 against all three defendants and all the Title VII claims against HEA. Each of the defendants then moved for summary judgment. The district court granted summary judgment on all claims Key brought against HEA and HMMA, and it granted summary judgment on all claims Key brought against Dynamic except the § 1981 retaliation claim, which proceeded to trial.

Dynamic then filed a motion to strike Key's demand for a jury trial, arguing that Key had signed an agreement that included an express waiver of a right to trial by jury. The district court denied Dynamic's motion to strike without an explanation. Dynamic then moved to certify an interlocutory appeal of the district court's denial of its motion to strike the jury demand. The district court denied this motion as well. But in its order denying the motion, the district court also explained that it denied Dynamic's previous

motion to strike the jury demand because "it did not find evidence that Key 'knowingly and intentionally' waived her Seventh Amendment right to a trial by jury."

During the trial for Key's § 1981 retaliation claim, Dynamic proposed a jury instruction regarding the first element of the retaliation claim—protected activity. But the district court declined to use Dynamic's proposed instruction and, instead, used its own instruction. The jury returned a verdict in favor of Key and awarded compensatory backpay damages of $85,200, compensatory emotional pain and suffering damages of $214,864, and punitive damages of $511,200, plus interest.

Dynamic appeals the district court's judgment against it while Key appeals the district court's orders on her other claims.

## II. STANDARD OF REVIEW

"We review the district court's order granting summary judgment *de novo*." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (citing *Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 865 (11th Cir. 2007)). "In conducting our review, we apply the same legal standards as the district court . . . [and] review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." *Id.* (citation modified).

"We [also] review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Conroy v. Abraham Chevrolet–Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004) (emphasis omitted) (quoting

*Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000)).

Finally, "[w]e review only for an abuse of discretion a district court's refusal to give a requested jury instruction." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012) (citation omitted). "In refusing to give a requested jury instruction, '[a]n abuse of discretion is committed only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.'" *Id.* (quoting *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333–34 (11th Cir. 2011)).

## III. DISCUSSION

A. *Key's Claims Against Dynamic Security, Inc.*

1. Summary Judgment

The district court granted summary judgment on Key's Title VII claims on timeliness grounds, finding that Key sued Dynamic more than ninety days after the presumed date that she received the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1). Key maintains that she never received in the mail the EEOC's letter notifying her of her right to sue Dynamic. Nevertheless, the district court found that the circumstances of this case raised "a presumption that the EEOC properly mailed notice of Key's right to sue Dynamic on March 1, 2019." It relied on evidence that Key received mail from the EEOC at the same address prior to the alleged failure to receive the right-to-sue letter and that Key failed to identify "any evidence

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/05/2025 Page: 10 of 16



demonstrating there may have been a flaw in the mailing procedure." Thus, the district court presumed that Key received the letter on March 4, 2019—three days after the EEOC mailed it—and that Key was at that point on notice of her right to sue Dynamic. With that presumption, the deadline for Key to sue Dynamic was June 2, 2019. *See* 42 U.S.C. § 2000e-5(f)(1). Because she filed suit on October 10, 2019—more than three months after the presumed deadline—the district court granted summary judgment based on lack of timeliness.

Key argues that the district court should have credited her testimony at the summary judgment stage and sent the timeliness question to the jury. In her view, because there was no indication that she should be held at fault for the failure to receive the notice, the district court should not have presumed that she received it within three days of mailing. We agree.

Typically, when we consider whether a person has exhausted administrative remedies before the EEOC, "statutory notification is complete only upon actual receipt of the right to sue letter." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *rev'd on other grounds,* 424 U.S. 747 (1976)). But instead of "a rule determining when a complainant has received notice of the right to sue," we have "imposed upon complainants some 'minimum responsibility . . . for an orderly and expeditious resolution' of their claims." *Id.* (quoting *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999) (citation modified)). We analyze the

ninety-day limitations period for a person to sue after receiving a right-to-sue letter "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [their] control." *Zillyette*, 179 F.3d at 1340 (citation omitted). We have "applied a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr*, 427 F.3d at 953 n.9 (citing *Zillyette*, 179 F.3d at 1342). "Receipt is presumed when a complainant is unable to show that her failure to receive [a right-to-sue] letter was in no way her fault." *Id.* at 952.

In her deposition, Key testified to the following: (1) Key had never seen the Dynamic right-to-sue letter before, (2) no one except Key and her husband retrieved their household mail (3) she received three other letters from the EEOC within a few months, and (4) Key believed her charges against Dynamic and HMMA were combined and that the right-to-sue letter she received regarding HMMA was also her right-to-sue letter regarding Dynamic. She also testified that she engaged in email communications with the investigator at the EEOC, but in those emails, the EEOC never notified her that it had dismissed the charge against Dynamic. Absent any evidence of negligence on Key's part, we find that Key has met her burden to establish that the failure to receive the right-to-sue letter was in no way her fault and that she took "minimum responsibility . . . for an orderly and expeditious resolution of [her] claims." *Id.* (citation modified).

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/05/2025 Page: 12 of 16



The Third Circuit addressed a similar situation. *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219 (3d Cir. 2024). In *Hayes*, the plaintiff filed a charge with the EEOC but, after deciding not to pursue the case, the EEOC mailed the right-to-sue letter to the plaintiff on March 11, 2020. *Id.* at 220. The plaintiff claimed that she did not receive the letter in the mail or otherwise see the letter until August 27, 2020. *Id.* at 221. The plaintiff filed her lawsuit on November 24, 2020—"more than eight months after the mailing date listed on the EEOC's letter but fewer than 90 days after [the plaintiff] . . . claim[ed] to have received it." *Id.* at 221. To determine the date that the ninety-day filing period began, the Third Circuit applied a three-day presumption of receipt by mail. *Id.* at 224 (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)). The court then determined whether the plaintiff provided sufficient evidence to rebut the three-day presumption of receipt. *See id.*

The Third Circuit concluded that the plaintiff "introduced enough evidence to rebut the three-day presumption and defeat summary judgment." *Id.* The court considered the plaintiff's sworn declaration that "she never received the right-to-sue letter by mail and first saw it after her lawyer obtained it from the EEOC on August 27," and the sworn statement from her lawyer's office manager "that the law office never received the letter by mail, despite having scanned and documented all incoming correspondence." *Id.* Because the plaintiff's declarations "create[d] a dispute of material fact sufficient to defeat summary judgment on timeliness," the

USCA11 Case: 24-11069 Document: 81 Date Filed: 08/26/2026 Page: 38 of 41



court determined that "[a] jury therefore must resolve when [the plaintiff] first received the right-to-sue letter." *Id.*

We adopt the Third Circuit's reasoning in *Hayes*. Because Key "introduced enough evidence to rebut the three-day presumption" and "create[d] a dispute of material fact sufficient to defeat summary judgment on timeliness," the district court erred by using the presumption to grant summary judgment in favor of Dynamic on Key's Title VII claims. *See id.* Therefore, at trial, the jury must determine the date by which Key was on notice of her right to sue Dynamic. *See id.*

2. Jury Trial Waiver

Dynamic moved to strike Key's jury demand, but the district court denied the motion. Dynamic argues that the district court erred because Key waived her right to a jury trial. We disagree.

The Seventh Amendment guarantees the right to a jury trial in civil cases. U.S. CONST. amend. VII. A party may waive the right to a jury trial if the waiver is made knowingly and voluntarily. *See Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("[F]or a waiver [of constitutional rights] to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). Because the right to a jury trial is fundamental, courts "must indulge every reasonable presumption against waiver." *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993) (citation modified).

The district court declined to strike Key's jury demand because it could not find that Key made a knowing and voluntary waiver of her right to a jury trial. Key did not sign the portion of the Handbook where the waiver language was located or any other page of the Handbook. Instead, she signed a separate form agreeing to be bound by the "rules, regulations, and policies set forth in th[e] [H]andbook." But a waiver is not a rule, regulation, or policy, and the signed form did not specifically mention the right to trial by jury. So a signature expressing agreement to be bound by the many "rules, regulations, and policies set forth in th[e] [H]andbook" does not evince Key's intent specifically to waive her fundamental right to a jury trial. Additionally, Key testified that she did not remember whether she read the jury waiver before beginning work at Dynamic.

We conclude that Dynamic failed to establish that Key read and understood the meaning of the Handbook's jury waiver provision before signing the acknowledgement form. We therefore affirm the district court's decision on this issue.

3. Jury Instruction Challenge

At trial, the district court gave the following instruction regarding protected activity:

> For the first element, protected activity, Ms. Key claims that she engaged in protected activity when she complained to Dynamic that she felt discriminated against based on her race. That action is "protected activity" if it was based on Ms. Key's good-

USCA11 Case: 24-11069 Document: 76 Date Filed: 08/25/2026 Page: 15 of 16



> faith, reasonable belief that she was discriminated against because of her race. Ms. Key had a "good faith" belief if she honestly believed that she was discriminated against because of her race. Ms. Key had a "reasonable" belief if a reasonable person would, under the circumstances, believe that she was discriminated against because of her race. Ms. Key does not have to prove that she was actually discriminated against because of her race. But she must prove that she had a good-faith, reasonable belief that discrimination occurred.

Dynamic argues that the district court abused its discretion by charging the jury with this instruction over its objection. We agree.

"An employee's complaint about discrimination constitutes protected activity if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'" *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999)). Additionally, the plaintiff must "explicitly or implicitly communicate [the] belief that the [challenged] practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation modified) (quoting EEOC Compl. Man. (CCH) § 8–11–B(2) (2006)).

The district court's protected activity instruction omitted the second requirement: It failed to instruct the jury to determine whether Key explicitly or implicitly communicated her belief that she had been discriminated against because of her race. Instead, the court's instructions erroneously presumed that Key had met her

burden on this issue: "[S]he complained to Dynamic that she felt discriminated against based on her race."

Because the jury was not properly instructed on protected activity, we reverse the district court, vacate the judgment, and remand the case for a new trial. Since we are remanding the case for a new trial, we need not address the remainder of the arguments related to the previous trial.

B. *Key's Claims Against HMMA and HEA*

Key asks us to reverse the district court's dismissals of her Title VII and § 1981 claims against HEA and HMMA and her § 1981 race discrimination claim against Dynamic at both the motion-to-dismiss and summary-judgment stages. After careful consideration of the record and the parties' briefs, and with the benefit of oral argument, we find no reversible error in the district court's conclusions. Accordingly, we affirm as to these issues.

## IV. CONCLUSION

We **AFFIRM** the district court's dismissals and grants of summary judgment on Key's claims against HEA and HMMA and Key's § 1981 race discrimination claim against Dynamic. But as to Key's other claims against Dynamic, we **REVERSE** the district court's rulings as set forth above, we **VACATE** the district court's judgment, and we **REMAND** the case for further proceedings consistent with this opinion.